## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____

| | | |
|---|---|---|
| **PAUL MATHIS,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 13-3740** |
| | : | |
| **CHRISTIAN HEATING AND AIR** | : | |
| **CONDITIONING, INC.** | : | |
| | : | |
| **Defendant.** | : | |

_____

**DuBois, J.**                                                              **October 7, 2014**

## M E M O R A N D U M

### I.       INTRODUCTION

Plaintiff Paul Mathis brings this action against his former employer, Christian Heating and Air Conditioning. Mathis alleges violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e et seq., and the Pennsylvania Human Relations Act (PHRA), 43 PA. CONS. STAT. §§ 951 et seq. Presently before the Court is defendant's Motion to Dismiss Pursuant to Rule 12(b)(6). For the reasons that follow, the Court grants that part of defendant's Motion that seeks dismissal of plaintiff's failure to accommodate claim under Title VII and denies the Motion with respect to plaintiff's claim of unlawful retaliation under Title VII.

### II.      BACKGROUND

Plaintiff was employed from April 26, 2010 until January 24, 2012 as a full-time sheet metal installer for defendant, Christian Heating and Air Conditioning. The company is owned by David Peppelman, who also served as plaintiff's supervisor. Plaintiff claims that during his employment he was repeatedly subjected to comments from Mr. Peppelman about his religious beliefs and that Mr. Peppelman continuously insisted that plaintiff attend church. (Compl. ¶ 15.)

Plaintiff alleges that Mr. Peppelman continued making such comments throughout his employment notwithstanding numerous requests to stop. (Compl. ¶ 17.) Plaintiff was also required to wear an identification badge with defendant's mission statement printed on the back, which read in part: "This company is not only a business, it is a ministry. It is set on standards that are higher than man's own. Our goal is to run this company in a way most pleasing to the lord [sic]…." (Compl. ¶ 18.) Plaintiff wore the badge during work hours but covered the mission statement with a piece of tape. Plaintiff claims that the mission statement on the badge was an attempt by defendant to "enforce certain religious ideologies on its employees (including him)," (Compl. ¶ 20), and that wearing the badge conflicted with his own beliefs as an atheist. (Compl. ¶ 10.)

On January 23, 2012, plaintiff claims that Mr. Peppelman approached him and told him that he could not continue to work unless he removed the tape from the back of his identification badge. (Compl. ¶ 21.) Plaintiff states that he informed Mr. Peppelman that he wanted to continue to conceal the mission statement because it conflicted with his religious beliefs and he felt that the badge was an attempt by defendant to force its own religious beliefs on him. (Compl. ¶ 21.) Defendant declined to allow plaintiff to conceal the mission statement. (Compl. ¶ 22); (Def.'s Answer with Affirmative Defenses, ¶ 22 ("…Plaintiff was advised that he would not be permitted to conceal the reverse side of the employee ID badge if he wished to continue employment. Plaintiff refused the directive and voluntarily resigned….").) Plaintiff was terminated from employment on January 23, 2012. (Def.'s Mem. Supp. Mot. Dismiss 3.)

Plaintiff subsequently applied for unemployment compensation benefits to the Pennsylvania Unemployment Compensation Service Center but received a Notice of

Determination denying benefits dated February 8, 2012. (Def.'s Mot. Dismiss, Ex. I at 3A, 29A.) Plaintiff filed an appeal of the denial of benefits and a hearing was held before a referee on March 21, 2012. (Id.) David Peppelman and Anita Peppelman, defendant's administrator, testified without counsel at the hearing, but plaintiff failed to appear. (Id. at 47A.) The Referee denied benefits. (Id. at 74A.) Plaintiff appealed the denial of benefits by the Referee to the Unemployment Compensation Board of Review (UCBR), explained the reasons for his failure to attend the hearing before the Referee, and requested a remand hearing. (Id. at 80A, 86A–87A.) The UCBR directed the Referee to schedule a remand hearing, which was held on June 12, 2012. Plaintiff appeared at the remand hearing with counsel, as did David Peppelman and Anita Peppelman. (Id. at 278A.) On July 18, 2012, the UCBR issued its Decision and Order and noted that it had considered the testimony from both hearings in reaching its decision.

The UCBR made the following findings of fact:

> (1) For the purpose of this appeal, the claimant [Mathis] last worked for Christian Heating & Air Conditioning as a full time sheet metal installer from April 26, 2010 until January 23, 2012, his last day of work, with a final rate of pay of $25.00 per hour.
>
> (2) The employer maintains a mission statement which includes a religious goal.
>
> (3) The employee identification badge contained the mission statement at the time that the claimant was hired.
>
> (4) The employer does not require that employees share the owners' religious beliefs.
>
> (5) The claimant had not informed the employer he had any issue with the

3

employer's mission statement.

(6) The mission statement is printed on the reverse of the employee's

identification badge.

(7) Employees are required to wear uniforms, including the badge, at all times.

(8) On January 23, 2012, the employer's owner learned the claimant had covered

the mission statement on his badge with duct tape.

(9) The owner asked the claimant why he had done so.

(10) The claimant informed the employer the statement was against his religious

freedom.

(11) The owner told the claimant to remove the duct tape or he could leave.

(12) The claimant chose to leave and the work relationship ended.

(Def.'s Mot. Dismiss, Ex. E, Board's Decision and Order.) Based on these findings, the UCBR

concluded that plaintiff had chosen to leave his employment and that his separation from

defendant was a voluntary quit under § 402(b) of Pennsylvania's Unemployment Compensation

Law. Section 402(b) provides that:

> An employee shall be ineligible for compensation for any week…
> In which his unemployment is due to voluntarily leaving work
> without cause of a necessitous and compelling nature, irrespective
> of whether or not such work is in "employment" as defined in this
> act.

43 PA. CONS. STAT. ANN. § 802(b) (West 2013). The UCBR further found that plaintiff had not

voiced any opposition to the identification badge before January 23, 2012, that plaintiff's

employer had not changed the terms of his employment, and that the employer had not required

plaintiff to do anything in violation of his religious beliefs. (Def.'s Mot. Dismiss, Ex. E, Board's

Decision and Order.) Thus, the UCBR concluded that plaintiff did not have a necessitous and compelling reason to leave his employment that would qualify him for compensation benefits under § 402(b). Plaintiff timely filed an appeal for review of the UCBR's order to the Pennsylvania Commonwealth Court.

The Commonwealth Court reviewed and upheld the findings of the UCBR.[1] First, the Court concluded that there was substantial evidence to support the UCBR's conclusion that plaintiff had been offered a "real choice between alternatives" — either removing the tape and continuing employment or choosing to leave and thus ending the work relationship. Mathis v. Unemployment Compensation Bd. of Review, 64 A.3d 293, 299 (Pa. Cmmw. Ct. 2013). Thus, the Court upheld the UCBR's determination that plaintiff had voluntarily quit his employment under § 402(b). Id.

Next, the Court turned to the issue of whether plaintiff had a necessitous and compelling reason for voluntarily resigning his employment. The Court noted that an actual conflict between a claimant's sincerely held religious beliefs and his employment conditions could constitute a necessitous and compelling reason to leave employment under § 402(b). Id. at 300 (citing Monroe v. Unemployment Compensation Bd. of Review, 535 A.2d 1222, 1224 (1988)). However, the Court found that plaintiff had offered no evidence of his sincere religious beliefs nor had he described "any actual conflict between a religious belief and Employer's requirement that the identification badge bearing the mission statement be worn." Id. Furthermore, the Court

---

[1] The Commonwealth Court's scope of review was limited to determining whether necessary findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. Mathis v. Unemployment Compensation Bd. of Review, 64 A.3d 293, 297 n.5 (Pa. Cmmw. Ct. 2013).

found that plaintiff had not offered any evidence that he had been harassed for his religious beliefs, that he had previously informed management of a conflict, or that he had requested an accommodation. Id. The Court therefore held that plaintiff had not carried the burden of showing a necessitous and compelling cause for leaving his employment and upheld the UCBR's denial of unemployment compensation benefits.

Plaintiff next filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) and with the Pennsylvania Human Relations Commission alleging that he was discharged from his employment as a result of discrimination based on religion, retaliation, and failure to provide a reasonable accommodation. (Def.'s Mot. Dismiss, Ex. C.) On March 29, 2013, the EEOC issued a Dismissal and Notice of Rights advising that based on its investigation it was "unable to conclude that the information obtained establishes violations of the statutes." (Def.'s Mot. Dismiss, Ex. D.) The EEOC further notified plaintiff of his right to file suit within 90 days. Id.

Plaintiff filed the present suit in this Court on June 27, 2013. In the Complaint he asserts two claims under Title VII and the PHRA: (1) that he was denied a reasonable religious accommodation by defendant and (2) that he was terminated in retaliation for his religious beliefs, his requested accommodations, and his complaints about suffering what he felt to be religious discrimination. (Compl. ¶¶ 26, 30.) Defendant filed its Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on October 1, 2013.

## III.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a civil plaintiff must allege facts that "raise a right to relief above the speculative level." Victaulic Co. v. Tieman, 499 F.3d 227, 234

(3d Cir. 2007) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570). Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," but the statement must still "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002).

## IV.    DISCUSSION

Defendant contends that plaintiff is barred from re-litigating key issues that were decided against him in the prior state proceedings under the doctrine of collateral estoppel, also known as issue preclusion, and that, as a result, his claims of failure to accommodate and unlawful retaliation under Title VII must be dismissed. Plaintiff in turn contends that issue preclusion does not apply because the issues decided in the state proceedings are distinct from those now before the Court and because he did not have a full and fair opportunity to litigate the issues in those proceedings before the Pennsylvania Unemployment Compensation Board of Review and the Pennsylvania Commonwealth Court. In the alternative, plaintiff argues that the application of collateral estoppel would deprive him of his Seventh Amendment right to a jury trial. Plaintiff also contends that the decisions of the Unemployment Compensation Referee would not be admissible in the present case and, therefore, there is no basis for precluding re-litigation of the issues in this Court.

For the reasons stated below, the Court concludes that plaintiff is barred by collateral estoppel from litigating issues essential to his failure to accommodate claim, and that claim must

be dismissed. The Court further concludes that collateral estoppel does not apply to issues essential to plaintiff's unlawful retaliation claim, and the Motion to Dismiss is denied as to that claim. The application of collateral estoppel to each of plaintiff's claims is discussed in turn below.

### A.   <u>Collateral Estoppel</u>

Collateral estoppel bars parties from re-litigating issues that were decided against them in a prior action. <u>Swineford v. Snyder Cnty. Pa.</u>, 15 F.3d 1258, 1266 (3d Cir. 1994). Under the Full Faith and Credit Act, federal courts must give state court decisions the same preclusive effect they would have in the courts of the rendering state. 28 U.S.C. § 1738; <u>see also</u> <u>Hitchens v. Cnty. of Montgomery</u>, 98 F. App'x 106, 111 (3d Cir. 2004). Collateral estoppel also extends to state administrative decisions that have been reviewed by a state court. <u>Spyridakis v. Riesling Group, Inc.</u>, No. 09-1545, 2009 WL 3209478, at *4 (E.D. Pa. Oct. 6, 2009) (citing <u>Mclaughlin v. Fisher</u>, 277 F. App'x 207, 214 (3d Cir. 2008)), <u>aff'd</u> <u>398 Fed. App'x 793 (3d Cir. 2010)</u>; <u>see also</u> <u>Kremer v. Chem. Constr. Corp.</u>, 456 U.S. 461, 466–67 (1982) (finding that a decision of the Appellate Division of the New York Supreme Court, which affirmed a decision of an administrative agency, had preclusive effect).

"For state judgments concerning appeals of administrative decisions, a federal court looks to the law of the adjudicating state to determine their preclusive effect." <u>Spyridakis</u>, 2009 WL 3209478 at *4; <u>see also</u> <u>Gares v. Willingboro Twp.</u>, 90 F.3d 720, 725 (3d Cir. 1996) (concluding that federal courts must "apply state law as interpreted by the state's highest court in an effort to predict how that court would decide the precise legal issues" before the court). On that issue, the Pennsylvania Supreme Court has determined that collateral estoppel applies if:

(1) The issue decided in the prior case is identical to the one presented in

the later action;

(2) There was a final adjudication on the merits;

(3) The party against whom the plea is asserted was a party or in privity

with a party in the prior case;

(4) The party against whom the doctrine is asserted had a full and fair

opportunity to litigate the issue in the prior proceeding; and

(5) The determination in the prior proceeding was essential to the

judgment.

Metro. Edison Co. v. Pennsylvania Pub. Util. Comm'n, No. 13-4288, slip op. at 27 (3d Cir. Sept.

16, 2014) (citing Office of Disciplinary Counsel v. Kiesewetter, 889 A.2d 47, 50–51 (Pa. 2005)).

The parties contest only the first and fourth elements of collateral estoppel — identity of

issues between plaintiff's claims in the state unemployment compensation proceedings and the

Title VII claims presently before the Court and plaintiff's opportunity to fully and fairly litigate

these issues in the prior state proceedings.[2] The Court will address the application of collateral

---

[2] With respect to the second element, the Court agrees with the parties that the decision of the
Commonwealth Court was a final adjudication on the merits. Although plaintiff could have
sought review of the Commonwealth Court's judgment by seeking permission to appeal to the
Supreme Court of Pennsylvania, he chose not to do so. Likewise, there is no dispute that, with
respect to the third element, the party against whom the plea is asserted, plaintiff, was a party in
the prior proceedings. Finally, regarding element five, the Court agrees with defendant that the
issue of whether plaintiff voluntarily left his employment as a result of religious discrimination
and a failure to accommodate his sincerely held religious beliefs and the underlying factual
issues were essential to the determination of the UCBR and the Commonwealth Court that
plaintiff did not qualify for unemployment compensation benefits under § 402(b) of
Pennsylvania's Unemployment Compensation Law. Plaintiff does not dispute this element of
collateral estoppel.

estoppel to each of plaintiff's claims in turn.

(a)     Plaintiff's Claim of Failure to Accommodate His Sincere Religious
        Beliefs

(i)     Identity of Issues

First, the Court must determine whether the issues decided against plaintiff in the prior proceedings are identical to the issues necessary to establish plaintiff's failure to accommodate claim under Title VII.  Title VII of the 1964 Civil Rights Act prohibits employers from discharging, disciplining, or otherwise discriminating against an employee in the terms and conditions of employment on the basis of the employee's religion. 42 U.S.C. § 2000e–2(a)(1). Employers have a duty to provide reasonable accommodation to employees when there is a conflict between their religious beliefs and the terms and conditions of their employment. 42 U.S.C. § 2000e(j). To establish a prima facie case of failure to accommodate under Title VII, plaintiff must show that: (1) he holds a sincere religious belief that conflicts with a job requirement; (2) he informed his employer of the conflict; and (3) he was disciplined for failing to comply with the conflicting requirement. E.E.O.C. v. GEO Group, Inc., 616 F.3d 265, 271 (3d Cir. 2010); Webb v. City of Philadelphia, 562 F.3d 256, 259 (3d Cir. 2009).

In determining whether issues are identical for preclusion purposes, the Pennsylvania Supreme Court distinguishes between collateral estoppel based on pure factual issues and collateral estoppel based on issues of law or mixed questions of fact and law. Jones v. United Parcel Serv., 214 F.3d 402, 406 (3d Cir. 2000) (citing Rue v. K-Mart Corp., 713 A.2d 82 (Pa. 1998)). Pure issues of fact are considered identical for purposes of collateral estoppel. Id. Pure issues of law or mixed questions of law and fact, however, will only be considered identical for

10

purposes of issue preclusion if the two actions promote similar policies. <u>Swineford</u>, 15 F.3d at

1267–68 (citing <u>Odgers v. Commonwealth Unemployment Compensation Bd. of Review</u>, 525

A.2d 359, 364 (Pa. 1987)); <u>J.F. ex rel. N.F. v. Sch. Dist. of Philadelphia</u>, No. 98-1793, 2000 WL

361866, at *21 (E.D. Pa. Apr. 7, 2000). In general, for mixed questions of law and fact, identity

of the issues can be established "by showing that the same general legal rules govern both cases

and that the facts of both cases are indistinguishable as measured by those rules." <u>Suppan v.

Dadonna</u>, 203 F.3d 228, 233 (3d Cir. 2000); <u>Migliore v. Ackerman</u>, No. 11-4018, 2013 WL

4079650, at *10 (E.D. Pa. Aug. 12, 2013).

   Defendant contends that the issues central to plaintiff's failure to accommodate claim are

identical to those determined against plaintiff by the UCBR and the Commonwealth Court.

These findings include: that defendant gave plaintiff a choice between removing the tape from

his identification badge or leaving employment and plaintiff chose to leave employment; that

plaintiff had not demonstrated that he held a sincere religious belief; that plaintiff had not shown

that he was repeatedly harassed on account of his religious beliefs or that he had requested a

religious accommodation; and that plaintiff had not described any conflict between a religious

belief and defendant's requirement that plaintiff wear the identification badge. Plaintiff, in turn,

argues that the issues in the two proceedings are not identical because the question of whether he

was entitled to unemployment compensation benefits was not dependent upon whether he was

subject to religious discrimination or retaliation, the subject of the present suit.

   The Court first concludes that the issue of whether plaintiff held a sincere religious belief

for purposes of receiving unemployment compensation is identical to the issue of whether he

held such beliefs for purposes of his Title VII claim. As the issue of whether plaintiff holds

sincere religious beliefs is a mixed question of fact and law, the Court must look to the

underlying purposes of the two actions to determine whether the issues are identical. Swineford,

15 F.3d at 1267–68. In deciding what constitutes a "religious belief" in the context of § 402(b),

Pennsylvania courts look to the understanding of the term as developed by the U.S. Supreme

Court in the context of the First Amendment Free Exercise Clause. See Monroe, 535 A.2d at

1225 (looking to the federal standard developed in United States v. Seeger, 380 U.S. 163, 185

(1965), to determine what constitutes a sincerely held religious belief for purposes of § 402(b)).

Both federal courts and the EEOC draw on the same standard in deciding what constitutes a

sincere religious belief for purposes of Title VII. See Davis v. Fort Bend Cnty., No. 13-20610,

2014 WL 4209371, at *3 (5th Cir. Aug. 26, 2014) (citing U.S. v. Seeger as defining the standard

for a "bona fide religious belief"); 29 C.F.R. § 1605.1 (noting that for purposes of determining

what constitutes a sincere religious belief under Title VII, the EEOC will apply the standard

developed in United States v. Seeger and Welsh v. United States, 398 U.S. 333 (1970)).

     The fact that Pennsylvania courts apply the same law to determine whether a claimant has

sincerely held religious beliefs for purposes of unemployment compensation as federal courts do

in determining whether a plaintiff has established a prima facie case of failure to accommodate

underscores that the proceedings share a similar purpose: to redress employees whose free

exercise of religion has been burdened in the workplace. Thus, the Court concludes that the issue

of whether plaintiff holds sincere religious beliefs for purposes of Title VII is identical to the

issue decided against plaintiff in the prior proceedings.

     Second, the Court concludes that the issues of whether plaintiff informed defendant of a

conflict between the employment requirements and his asserted religious beliefs or requested an

accommodation are identical to issues resolved against plaintiff in the prior state proceedings. The Commonwealth Court concluded that plaintiff had not submitted evidence of a conflict between his religious beliefs and his employment conditions and plaintiff admitted that he had never informed defendant of a conflict or requested an accommodation. <u>Mathis</u>, 64 A.3d at 300. To establish a prima facie case of failure to accommodate, however, plaintiff must show that a conflict existed and that he requested an accommodation. <u>See, e.g.</u>, <u>Knight v. Connecticut Dept. of Pub. Health</u>, 275 F.3d 156, 167–68 (2d Cir. 2001) (finding that plaintiffs could not establish a prima facie case under Title VII when there was no evidence on the record that they had ever requested an accommodation). As these precise factual issues were decided against plaintiff in the unemployment compensation proceedings, the Court concludes that the second element of the failure to accommodate claim is identical to issues litigated in the prior state proceedings.

Finally, the Court considers the Commonwealth Court's finding that defendant had offered plaintiff a choice of removing the tape from his badge and continuing his employment or refusing to do so and leaving his employment, and plaintiff chose to leave, ending the employment relationship. The factual issue of how plaintiff's employment came to be terminated is central to determining whether he was disciplined in the context of Title VII, the third element of plaintiff's failure to accommodate claim. Regardless of whether the two issues are coterminous, the UCBR's factual findings, as upheld by the Commonwealth Court, are not distinct from the issues that plaintiff would need to establish in the present suit and thus the Court finds that they are identical for purposes of collateral estoppel.

Therefore, the Court concludes that, in order to establish a prima facie case of failure to accommodate, plaintiff must prove issues that are identical to those decided against him in the

prior proceeding. Next, the Court will consider whether plaintiff had a full and fair opportunity to litigate in the prior state proceedings.

        (ii)    <u>Full and Fair Opportunity to Litigate the Issues in the Prior Proceeding</u>

Plaintiff argues that he did not have a full and fair opportunity to litigate the issues relevant to his failure to accommodate claim in the prior proceedings. Plaintiff contends that Pennsylvania law entirely bars the application of collateral estoppel to the findings of the UCBR, even when such findings are reviewed and upheld by the state courts, on the ground that UCBR proceedings never provide parties with a full and fair opportunity to litigate. (Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss 10.) In the alternative, plaintiff asserts that he did not have a full and fair opportunity to litigate because he was not able to conduct discovery in the state proceedings, which he claims would have allowed him to find persons who witnessed the exchange between himself and Mr. Peppelman on January 23, 2012.[3] (Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss 10–11.) Defendant counters that plaintiff had a full and fair opportunity to litigate the relevant issues because he was afforded due process protections throughout the prior proceedings and because there were no procedural barriers to prevent him from offering witnesses or otherwise fully developing the record at the state level. (Def.'s Reply Mem. Supp. Mot. Dismiss 5–7.)

The Court concludes that plaintiff had a full and fair opportunity to litigate the relevant issues in the state proceedings. First, plaintiff's assertion that the findings of the UCBR cannot

---

[3] Plaintiff contends that if he had been allowed to conduct formal discovery, he would have discovered that Gary O'Brien, another employee of defendant, claimed to have heard the conversation between plaintiff and Mr. Peppelman on January 23, 2012. Plaintiff attached a Certification to this effect from Mr. O'Brien with his Opposition to Defendant's Motion to Dismiss. (Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss, Ex. B.)

be given preclusive effect in subsequent federal proceedings is not supported by Pennsylvania case law. Plaintiff relies on <u>Rue v. K-Mart Corp.</u>,[4] in which the Pennsylvania Supreme Court held that an unemployment compensation referee's factual findings did not have preclusive effect in a later defamation action against plaintiff's former employer because the employer had not had a full and fair opportunity to litigate the factual issue in the unemployment compensation proceedings. 713 A.2d at 86. Specifically, the Court concluded in <u>Rue</u> that the employer, K-Mart, had not had a full and fair opportunity to litigate the issue because of the "fast and informal nature" of the proceedings before the Referee and because K-Mart had had little incentive to vigorously litigate due to the "negligible economic consequences" of the proceeding. <u>Id.</u> at 85–87.

The Court concludes that "<u>Rue</u> neither provides a blanket exception to collateral estoppel to unemployment compensation proceedings nor supports plaintiff's view that collateral estoppel does not apply in this action." <u>Spyridakis</u>, 2009 WL 3209478 at *6–7 ("<u>Rue</u>'s holding denies preclusive effect where the elements of collateral estoppel are not met, but says nothing to the effect that a decision in an unemployment compensation proceeding per se can never meet those elements."). <u>Rue</u> simply reinforces the point that courts must engage in a case-by-case analysis to determine whether the parties actually had a full and fair opportunity to litigate issues in a

_____

[4] Plaintiff cites two cases from the Eastern District of Pennsylvania in which the court interpreted <u>Rue</u> as denying preclusive effect to all findings in unemployment compensation proceedings. <u>Francis v. Atlas Machining & Welding, Inc.</u>, No. 11-6487, 2013 WL 592297, at * 5 (E.D. Pa. Feb. 15, 2013) (citing <u>Rue</u> as holding that Pennsylvania courts do not apply the doctrine of issue preclusion in the unemployment compensation context); <u>Torres v. EAFCO, Inc.</u>, No. 00-2846, 2001 WL 41135, at *3 (E.D. Pa. Jan. 17, 2001) (citing <u>Rue</u> and concluding that "because the courts of Pennsylvania no longer apply the doctrines of preclusion in the unemployment compensation context, we will not do so here."). As explained above, however, these decisions were based on an overly broad reading of the Pennsylvania Supreme Court's holding in <u>Rue</u>.

15

particular proceeding. See Spyridakis v. Riesling Group, Inc., 398 Fed. App'x 793, 798 (3d Cir. 2010) (affirming the district court's conclusion that findings of the UCBR can have preclusive effect under Rue).

A full and fair opportunity to litigate requires only that proceedings before a state agency satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause. Migliore, 2013 WL 4079650 at *11 (citing Kremer, 456 U.S. at 481). The Due Process Clause does not dictate any "single model of procedural fairness, let alone a particular form of procedure." Kremer, 456 U.S. at 483. Instead, courts engage in a balancing test to determine whether due process has been satisfied in a particular case, weighing the private interest affected by the government action and the value of additional procedural safeguards against the fiscal and administrative burdens that additional procedures would impose on the government. Rogin v. Bensalem Twp., 616 F.2d 680, 694 (3d. Cir. 1980) (citing Mathews v. Eldridge, 424 U.S. 319, 335 (1976)). Factors that courts generally consider in determining whether procedural due process requirements have been met include: (1) notice of the basis of the governmental action; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result. Id.

The unemployment compensation proceedings satisfy the requirements of due process. Plaintiff had a right during the proceedings before the Unemployment Compensation Referee to present testimony and evidence; to question opposing parties and witnesses, including through cross-examination; and to be represented by counsel. (See Def.'s Mot. Dismiss, Ex. I,

16

Unemployment Compensation Bd. of Review, Notice of Hearing 273A–275A, May 29, 2012) (detailing the rights of the parties before the Referee)); (Def.'s Mot. Dismiss, Ex. I, Tr. 280A, June 12, 2012) (transcript of the unemployment compensation hearing demonstrating that the Referee informed plaintiff of these rights). Plaintiff received a hearing before neutral arbiters, was represented by counsel at the remand hearing, and had the opportunity to make an oral presentation to the Unemployment Compensation Referee. Both the UCBR and the Commonwealth Court issued reasoned, written decisions based on the established record. Furthermore, in contrast to the defendant in Rue, plaintiff had the incentive to vigorously litigate the relevant issues since they were critical to his receipt of unemployment compensation. These protections have been found to be sufficient to constitute a full and fair opportunity to litigate in the unemployment compensation context. See Magoni-Detwiler v. Pennsylvania, 502 F. Supp. 468, 475–76 (E.D. Pa. 2007).

Plaintiff further argues that he did not have a full and fair opportunity to litigate the relevant issues because he was not allowed to conduct discovery. However, formal, pre-hearing discovery is not generally required in administrative hearings to satisfy procedural due process. Kropat v. Fed. Aviation Admin., 162 F.3d 129, 132 (D.D.C. 1998). Plaintiff had the right in the unemployment compensation proceedings to request a subpoena to compel testimony of witnesses and production of documentary evidence if necessary, and he did not do so. (See Def.'s Mot. Dismiss, Ex. I, Unemployment Compensation Bd. of Review, Notice of Hearing, 273A–275A, May 29, 2012.) The fact that plaintiff chose not to take advantage of this procedural mechanism does not undermine the fact that he was afforded both the right and the opportunity

17

to do so.[5]

While redetermination of issues may be justified if "there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation," Kremer, 456 U.S. at 481 (quotations omitted), there is no evidence to suggest that the state proceedings suffered from any of these shortcomings. The court therefore concludes that plaintiff received the required due process protections during the course of the state proceedings and thus had a full and fair opportunity to litigate the issues relevant to his failure to accommodate claim.

For the reasons stated above, the Court concludes that all five elements of collateral estoppel are satisfied with respect to plaintiff's failure to accommodate claim. In particular, plaintiff is barred from re-litigating the issues of whether he held a sincere religious belief that conflicted with his work requirements, whether there was a conflict between such beliefs and his conditions of employment, whether he requested a religious accommodation, and whether he decided to leave employment after being given a choice by his employer. Since these issues were decided against plaintiff in the prior proceedings and are essential to his Title VII failure to accommodate claim, the Court concludes that plaintiff cannot state a claim upon which relief can be granted as to this claim. The Court next turns to plaintiff's claim of unlawful retaliation.

---

[5] Plaintiff also does not explain why he was not able to locate Mr. O'Brien and other potential witnesses prior to his hearing before the Unemployment Compensation Referee or how the available procedures prevented him from developing the factual record. See Minnick v. City of Duquesne, 65 F. App'x 417, 423 (3d Cir. 2003) (rejecting plaintiff's argument that he did not have a full and fair opportunity to litigate where he did not show how the available procedures prevented development of the factual record).

      (b)   <u>Unlawful Retaliation</u>

Plaintiff next claims that he suffered unlawful retaliation for his religious beliefs, his requested accommodation, and his complaints about suffering what he felt to be religious discrimination.[6] Defendant again contends that all of the issues necessary to plaintiff's Title VII unlawful retaliation claim were decided against him in the prior proceedings and that he is barred by collateral estoppel from re-litigating them here. The Court disagrees for the reasons stated below.

      (i)   <u>Identity of Issues</u>

As discussed in Part IV(A)(a)(i), <u>supra</u>, there must be identity of issues between the prior and current proceedings in order for collateral estoppel to apply under Pennsylvania law. To establish a prima facie case of unlawful retaliation under Title VII, plaintiff must show that (1) he engaged in conduct protected by Title VII; (2) his employer took materially adverse action against him; and (3) there was a causal connection between his participation in the protected activity and the adverse employment action. <u>Moore v. City of Philadelphia</u>, 461 F.3d 331, 340–42 (3d Cir. 2006). The issue before the Court, then, is whether these elements are identical to the issues decided against plaintiff in the unemployment compensation proceedings.

First, defendant argues that the Commonwealth Court determined that plaintiff did not engage in protected activity under Title VII. The Court disagrees. Title VII's anti-retaliation provision protects persons who participate in certain Title VII proceedings ("participation

---

[6] Title VII prohibits employers from "discriminat[ing] against any individual…because he has opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a).

activity") as well as those who oppose discrimination made unlawful by Title VII ("opposition activity"). Id. at 341. Opposition activity is broadly defined to include both "[w]hen an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination" and when "an employee takes a stand against an employer's discriminatory practices…by standing pat…[and] refusing to follow a supervisor's order." Crawford v. Metro. Gov't of Nashville and Davidson Cnty., Tenn., 555 U.S. 271, 276–77 (2009) (internal quotations omitted). Employees engaging in "opposition activity" must "hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." Moore, 461 F.3d at 341. As long as the employee has a reasonable belief that the employment activity is unlawful under Title VII, the employee has engaged in protected opposition activity "even if the employee turns out to be mistaken as to the facts." Sias v. City of Demonstration Agency, 588 F.2d 692, 695 (9th Cir. 1978).

The Court concludes that the Commonwealth Court never adjudicated the issue of whether plaintiff engaged in opposition activity under Title VII. The Commonwealth Court did not inquire as to whether plaintiff had an objectively reasonable belief, held in good faith, that he was engaging in opposition activity when he informed his employer that he had chosen to cover the mission statement on his name badge because he believed it was against his religious beliefs. Furthermore, the issues decided by the UCBR and the Commonwealth Court are not determinative of whether plaintiff engaged in activity protected by Title VII. The Commonwealth Court's findings that plaintiff did not describe an actual conflict with his religious beliefs and did not demonstrate that he experienced religious harassment do not establish that he did not have an objectively reasonable belief that he was engaging in proper

opposition activity. The issue of whether plaintiff requested a religious accommodation also does not definitively address whether plaintiff participated in any opposition activity under Title VII. Indeed, plaintiff's act of refusing to uncover his badge could amount to opposition activity as long as he reasonably believed, in good faith, that he was engaging in protected activity. This issue is yet to be adjudicated.

Furthermore, different purposes underlie state unemployment compensation proceedings and Title VII unlawful retaliation actions. Title VII provides a comprehensive statutory scheme for protecting persons whose employment is adversely impacted by their efforts to safeguard federal non-discrimination rights. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63 (2006) ("The [Title VII] antiretaliation provision seeks to secure that primary objective [of preventing discrimination] by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees."). Although, as discussed above, Pennsylvania courts give some consideration to religion-based employment discrimination in making decisions in unemployment compensation cases, state unemployment compensation proceedings are not focused on protecting employees against retaliation as defined in Title VII. Rather, such proceedings are designed to mitigate the economic consequences of unemployment. Swineford, 15 F.3d at 1268. Given the different legal standards and purposes behind the two proceedings, the Court concludes that the Commonwealth Court did not address the issue of whether plaintiff engaged in protected Title VII activity.

Next, defendant argues that plaintiff cannot satisfy the second element of his unlawful retaliation claim — that he experienced an adverse employment outcome — because the Commonwealth Court found that he had chosen to leave employment after being given a choice

by his supervisor. Again, this Court disagrees. Under Title VII's anti-retaliation provision, an adverse employment outcome is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N., 548 U.S. at 77 (quotations omitted). In the prior proceedings, the UCBR and the Commonwealth Court concluded that plaintiff had chosen to leave his employment after being given an ultimate choice by his employer, amounting to a "voluntary quit" under Pennsylvania law. The prior proceedings, however, did not address the issue of whether the choice given to plaintiff would have dissuaded a reasonable worker from making or supporting a charge of discrimination. Thus, while plaintiff is precluded from re-litigating the UCBR's pure factual finding that he had chosen to leave his employment rather than remove the tape from his identification badge, he is not precluded from re-litigating the legal consequences of this fact under Title VII to determine whether he suffered an adverse employment outcome.

For the above reasons, the Court concludes that, with respect to plaintiff's unlawful retaliation claim, the issues in the two proceedings are not identical. Thus, the elements for collateral estoppel under Pennsylvania law are not satisfied and the Court finds that plaintiff is not barred from litigating the issues of whether he engaged in conduct protected by Title VII; whether his employer took materially adverse action against him; and whether there was a causal connection between his participation in the protected activity and the adverse employment action.

B.     **Plaintiff's Additional Arguments**

In response to defendant's Motion to Dismiss, plaintiff raises several additional arguments against the application of collateral estoppel, all of which the Court rejects.

First, plaintiff contends that collateral estoppel cannot be applied to whether he resigned or was terminated from his employment because the issue involves a credibility determination that must be resolved by a jury. (Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss 13.) However, once a party "has had the facts determined against him in an earlier proceeding…there is no further factfinding function for the jury to perform." Parklane Hosiery Co. v. Shore, 439 U.S. 322, 335–36 (1979) (citing Ex parte Peterson, 253 U.S. 300, 310 (1920) ("No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined.")). In the present case, the UCBR made the factual finding that plaintiff had chosen to leave his employment after being given a choice by his employer to comply with the conditions of his employment or leave. As discussed in Part IV(A)(a)(i), supra, this finding has preclusive effect in the current proceedings, and there is no issue of fact remaining for the jury to decide.

Even assuming, arguendo, that plaintiff had a right to a jury trial on the failure to accommodate claim, it would not alter the Court's conclusions. Plaintiff is estopped from re-litigating issues essential to his failure to accommodate claim and thus cannot state a claim upon which relief can be granted in this Court on that issue. Further, with respect to his unlawful retaliation claim, although plaintiff is estopped from re-litigating the UCBR's pure factual findings about the circumstances of his termination, the Court has determined that plaintiff is not estopped from litigating the legal consequences of these findings and related findings in the present suit. Therefore, the Court concludes that the application of collateral estoppel in this case does not violate plaintiff's Seventh Amendment right to a jury trial.

Next, plaintiff argues that there is no basis to preclude litigation of the issues decided in the prior state proceedings because these findings would not be admissible as evidence in the

23

present suit. (Pl.'s Mem. Law Opp'n Def.'s Mot. Dismiss 15–20.) The application of collateral

estoppel and the admissibility of evidence on contested issues of fact and law, however, are

distinct issues. Collateral estoppel preserves the finality of judicial determinations and conserves

judicial resources. Swineford, 15 F.3d at 1266. Once collateral estoppel is applied to an issue of

fact or law, it is no longer contested. The cases cited by plaintiff concern administrative

decisions that were offered as evidence of contested issues in subsequent suits and were subject

to the Federal Rule of Evidence 403 balancing test to determine whether the "probative value [of

the evidence was] substantially outweighed" by the danger of unfair prejudice. See, e.g.,

Coleman v. Home Depot, Inc., 306 F.3d 1333, 1345 (3d Cir. 2002) (holding that Rule 403 may

operate on an EEOC report but that the "decision of whether or not an EEOC Letter of

Determination is more probative than prejudicial is within the discretion of the trial court"). The

concern that prior administrative findings may confuse or prejudice the jury is distinct from

whether key issues of fact or law were determined in a prior adjudication, and thus the Court

rejects plaintiff's argument that the findings in the unemployment compensation proceeding

cannot be given preclusive effect.

Finally, plaintiff argues that he should be given the opportunity to file an Amended

Complaint to cure the deficiencies in his present Complaint. (Pl.'s Mem. Law Opp'n Def.'s Mot.

Dismiss 20–21.) Although Federal Rule of Civil Procedure 15(a) provides that courts "should

freely give leave [to amend] when justice so requires," the Court may deny leave for good

reason, including futility of amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). Futility

"means that the complaint, as amended, would fail to state a claim upon which relief could be

granted," the same legal standard as applies under Federal Rule of Civil Procedure 12(b)(6) for

assessing a motion to dismiss. <u>Great W. Mining & Mineral Co. v. Fox Rothschild LLP</u>, 615 F.3d 159, 175 (3d Cir. 2010). In the present case, the application of collateral estoppel to the issues necessary to plaintiff's failure to accommodate claim means that plaintiff cannot state a claim upon which relief can be granted on that issue. Thus, it would be futile to allow plaintiff to file an Amended Complaint and the Court declines to allow plaintiff to do so.

## V.      CONCLUSION

For the aforementioned reasons, the Court grants that part of defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) that seeks dismissal of plaintiff's failure to accommodate claim under Title VII and denies the Motion in all other respects.

An appropriate order follows.