**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **PAUL MATHIS,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **NO. 13-cv-3740** |
| | : | |
| **CHRISTIAN HEATING AND AIR** | : | |
| **CONDITIONING, INC.,** | : | |
| | : | |
| **Defendant.** | : | |

_____

**DuBois, J.**                                                                                            **March 12, 2015**

## M E M O R A N D U M

### I.        INTRODUCTION

Plaintiff brings this action against his former employer, Christian Heating and Air

Conditioning, Inc. for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951 *et seq.*

Presently before the Court is Plaintiff's Motion for Clarification of the Court's Memorandum

and Opinion Regarding Defendant's Motion to Dismiss. The Court construes the Motion for

Clarification as a Motion for Reconsideration of the Court's Memorandum and Order dated

October 7, 2014. For the reasons that follow, the Motion for Reconsideration is granted, and,

upon reconsideration, the Motion to Dismiss, which was previously granted in part and denied in

part, is denied in its entirety.

### II.       BACKGROUND

The background of this case is set forth in detail in the Court's October 7, 2014

Memorandum and Order. *See Mathis v. Christian Heating and Air Conditioning, Inc.*, No. 13-

3740, 2014 WL 5027802 (E.D. Pa. Oct. 8, 2014). The facts will be recited in this Memorandum

only as necessary to address the issues presented by the Motion presently before the Court.

### A.     Factual Background[1]

Plaintiff was employed from April 2010 until January 2012 as a full-time sheet metal installer for defendant, Christian Heating and Air Conditioning, Inc. The company is owned by David Peppelman, who also served as plaintiff's supervisor. Plaintiff asserts that during his employment he was subjected to comments from Peppelman about his religious beliefs and that Peppelman repeatedly insisted that plaintiff attend church. (Compl. ¶ 15.) Plaintiff was also required to wear an identification badge with defendant's mission statement printed on the back, which read in part: "This company is not only a business, it is a ministry. It is set on standards that are higher than man's own. Our goal is to run this company in a way most pleasing to the lord [sic]…." (Compl. ¶ 18.) Plaintiff wore the badge during work hours but covered the mission statement with a piece of tape. Plaintiff claims that wearing the badge conflicted with his beliefs as an atheist. (Compl. ¶ 10.)

Plaintiff alleges that on January 23, 2012, Peppelman approached plaintiff and told him that he could not continue to work unless he removed the tape from the back of his identification badge. (Compl. ¶ 21.) Plaintiff informed Peppelman that the mission statement conflicted with his religious beliefs and he felt that the badge was an attempt to force religious beliefs on him. (Compl. ¶ 21.) Defendant refused to allow plaintiff to continue concealing the mission statement. (Compl. ¶ 22.) Plaintiff contends that, as a result of this conversation, he was terminated from employment on January 23, 2012. (Id.)

---

[1] The facts are taken from the Complaint and are presented in the light most favorable to plaintiff.

Plaintiff subsequently applied to the Pennsylvania Unemployment Compensation Service Center for unemployment compensation benefits. On February 8, 2012, he received a Notice of Determination denying benefits. (Mot. to Dismiss, Ex. I at 3A, 29A.) Plaintiff filed an appeal, and a hearing was held before a referee on June 12, 2012. The Unemployment Compensation Board of Review ("UCBR") issued its Decision and Order on July 18, 2012, in which it concluded that plaintiff did not qualify for unemployment compensation benefits. (Mot. to Dismiss, Ex. E, Board's Decision and Order.) The UCBR made a number of factual findings, including findings that defendant told plaintiff "to remove the duct tape [from his badge] or he could leave" and that "claimant [Mathis] chose to leave and the work relationship ended." (*Id.*) Based on these findings, the UCBR concluded that plaintiff had chosen to leave his employment and that his separation from defendant was a "voluntary quit" under § 402(b) of Pennsylvania's Unemployment Compensation Law.[2] *Id.*

Plaintiff appealed to the Pennsylvania Commonwealth Court, which affirmed the Decision and Order of the UCBR. *Mathis v. Unemployment Compensation Bd. of Review*, 64 A.3d 293 (Pa. Commw. Ct. 2013). The Commonwealth Court determined, *inter alia*, that there was substantial evidence to support the UCBR's conclusion that plaintiff had been offered a "real choice between alternatives" — either removing the tape and continuing employment or choosing to leave and thus ending the work relationship. *Id.* at 299. For that reason, the Commonwealth Court upheld the UCBR's determination that plaintiff had voluntarily quit his

---

[2] Section 402(b) provides that: "An employee shall be ineligible for compensation for any week… In which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in 'employment' as defined in this act." 43 P.S. § 802(b).

employment under § 402(b). *Id.* Furthermore, the Commonwealth Court concluded that plaintiff had not carried his burden of showing a "necessitous and compelling" cause for leaving his employment on the basis of religious discrimination. For these reasons, the Commonwealth Court affirmed the UCBR's denial of unemployment compensation benefits under § 402(b).

Plaintiff next filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and with the Pennsylvania Human Relations Commission. On March 29, 2013, the EEOC issued a Dismissal and Notice of Rights in which plaintiff was advised of his right to file suit within 90 days. (Mot. to Dismiss, Ex. D.) Plaintiff filed the present suit on June 27, 2013. Plaintiff asserts two claims under Title VII and the PHRA: (1) that he was denied a reasonable religious accommodation by defendant, and (2) that he was terminated in retaliation for his religious beliefs, his requested accommodations, and his complaints of religious discrimination. (Compl. ¶¶ 26, 30.)

### B.    Defendant's Motion to Dismiss

On October 1, 2013, defendant filed a Motion to Dismiss Pursuant to Rule 12(b)(6). Defendant argued that plaintiff was barred under the doctrine of collateral estoppel from re-litigating a range of issues that were decided against plaintiff in his state unemployment compensation proceedings that are central to his employment discrimination claims. In particular, defendant contended that plaintiff could not re-litigate whether he chose to leave his employment with defendant or was involuntarily terminated or whether he had a sincerely held religious belief that defendant had burdened, among other issues. Consequently, defendant argued that plaintiff had failed to state a claim for relief under either Title VII or the PHRA. Plaintiff responded that collateral estoppel did not apply because the issues decided in the state

4

proceedings were distinct from those before this Court and because plaintiff did not have a full and fair opportunity to litigate the issues in the state proceedings.

The Court concluded that plaintiff was barred by collateral estoppel from litigating issues essential to his failure to accommodate claim, and thus dismissed that claim. With respect to plaintiff's retaliation claim, the Court determined that plaintiff was estopped from re-litigating certain factual findings of the UCBR and the Commonwealth Court of Pennsylvania — namely, the "pure factual finding that he had chosen to leave his employment rather than remove the tape from his identification badge." *Mathis*, 2014 WL 5027802 at \*22. The Court also determined that plaintiff was "not precluded from re-litigating the legal consequences of this fact under Title VII to determine whether he suffered an adverse employment outcome." *Id.* Consequently, the Court denied the Motion to Dismiss with respect to plaintiff's retaliation claim.

### C.      Plaintiff's Motion for Clarification

On February 20, 2015, plaintiff filed a Motion for Clarification of the Court's Memorandum and Order of October 7, 2014. In that Motion plaintiff requests that the Court address whether, under the Memorandum and Order of October 7, 2014, plaintiff is precluded from arguing, with respect to his retaliation claim, that he was actually terminated by his employer as a result of engaging in protected activity. (Mot. for Clarification 5.) Plaintiff also cited for the first time a provision of Pennsylvania Unemployment Compensation Law, 43 P.S. § 829, which provides in relevant part that:

> No finding of fact or law, judgment, conclusion or final order made with respect to a claim for unemployment compensation under this act may be deemed to be conclusive or binding in any separate or subsequent action or proceeding in another forum.

Plaintiff acknowledges that neither party brought § 829 to the attention of the Court at the time the Court considered defendant's Motion to Dismiss. (Mot. for Clarification 7.) Plaintiff now argues that a finding that he is precluded from taking the position that his employment was actually terminated by defendant conflicts with § 829, and thus urges the Court to clarify its opinion as to this issue. (Mot. for Clarification 8.) Defendant does not address plaintiff's argument with respect to § 829 in its Answer to Plaintiff's Motion for Clarification, but argues instead that the Court's Memorandum and Order of October 7, 2014 are clear and do not require clarification.

## III.   DISCUSSION

"The general purpose of a motion for clarification is to explain or clarify something ambiguous or vague, not to alter or amend." *Resolution Trust Corp. v. KPMG Peat Marwick*, No. 92-1373, 1993 WL 211555, at *2 (E.D. Pa. June 8, 1993). Although styled as a Motion for Clarification, plaintiff's Motion actually seeks reconsideration of the Court's Memorandum and Order of October 7, 2014, as plaintiff requests that the Court apply 43 P.S. § 829 for the first time in addressing whether he is precluded under the doctrine of collateral estoppel from making certain arguments with respect to his retaliation claim. *See Favia v. Ind. Univ. of Pa.*, 7 F.3d 332, 337 (3d Cir. 1993) (noting that, in determining the nature of a motion, a court must "look beyond [a] motion's caption to its substance"); *Asirifi v. Omni Asset Management, LLC*, No. 11-4039, 2013 WL 4858711, at *1 (D.N.J. Sept. 11, 2013) (noting that motions for clarification are at times evaluated under the standard for motions for reconsideration). Accordingly, the Court construes the Motion as one "invoking the district court's general discretionary authority to review and revise interlocutory rulings prior to entry of final judgment." *Pellicano v. Blue Cross*

6

*Blue Shield Ass'n*, 540 F. App'x 95, 97 n.4 (3d Cir. 2013).

    **A.**    **Timeliness of Plaintiff's Motion for Reconsideration**

    Treated as a Motion for Reconsideration of the Court's Memorandum and Order of October 7, 2014, it is clear that the Motion does not comport with Local Rule 7.1(g), as it was not filed within fourteen days of the Memorandum and Order at issue. *See* Local Rule 7.1(g) ("Motions for reconsideration or reargument shall be served and filed within fourteen (14) days after the entry of the order concerned, other than those governed by Federal Rule of Civil Procedure 59(e)."). However, "a district court can depart from the strictures of its own local procedural rules where (1) it has a sound rationale for doing so, and (2) so doing does not unfairly prejudice a party who has relied on the local rule to his detriment." *United States v. Eleven Vehicles, Their Equip. & Accessories*, 200 F.3d 203, 215 (3d Cir. 2000).

    With respect to the instant Motion, the Court finds that there is a sound rationale for departing from Local Rule 7.1(g) because, as explained below, 43 P.S. § 829 — which the parties previously failed to bring to the attention of the Court — clearly provides that findings of fact and conclusions of law made with respect to unemployment compensation claims under Pennsylvania law do not have preclusive effect in subsequent proceedings, such as the one before this Court. As defendant's Motion to Dismiss is based solely on the premise that, under the doctrine of collateral estoppel, plaintiff is barred from litigating issues essential to his employment discrimination claims, the application of § 829 is determinative of the Motion. Furthermore, the Court concludes that, at this stage in the proceedings, departing from the local rule would not unfairly prejudice defendant. The Court therefore waives the fourteen-day

deadline in Local Rule 7.1(g) and proceeds to consider the Motion for Reconsideration on the merits.

### B.    Granting the Motion for Reconsideration

Three situations justify granting a motion for reconsideration: (1) an intervening change in the controlling law; (2) the availability of new evidence not available when the court dismissed the prior petition; or (3) the need to correct a clear error of law or fact or to prevent "manifest injustice." *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999); *Dimensional Music Publ'g, LLC v. Kersey*, No. 05-6437, 2006 WL 1983189, at *1 (E.D. Pa. July 12, 2006). The party seeking reconsideration bears the burden of establishing one of these grounds. *Max's Seafood Café*, 176 F.3d at 677.

In his Motion, plaintiff does not assert that the law has changed or that new evidence has become available since the Court issued its October 7, 2014 Memorandum and Order. Plaintiff argues instead that, pursuant to 43 P.S. § 829, he should not be barred under the doctrine of collateral estoppel from arguing that his employment was actually terminated by defendant. The Court agrees with plaintiff that 43 P.S. § 829 is properly applied in this case. Although the parties did not raise this issue to the Court when it first considered the Motion to Dismiss, the Court now finds it appropriate to reconsider its Memorandum and Order of October 7, 2014, and apply 43 P.S. § 829 with respect to the Motion to Dismiss.

Furthermore, although plaintiff only requests reconsideration with respect to one aspect of his retaliation claim, the Court will reconsider its ruling in its entirety. *See Marsden v. Select Med. Corp.*, No. 04-4020, 2007 WL 518556, at *1 (E.D. Pa. Feb. 12, 2007) ("…so long as this

Court has jurisdiction over a case, it possesses inherent power over interlocutory orders, and can reconsider them when it is consonant with justice to do so.").

C.        Reconsideration of the October 7, 2014 Memorandum and Order

Collateral estoppel, also referred to as issue preclusion, bars parties from re-litigating issues that were decided against them in a prior action. *Swineford v. Snyder Cnty. Pa.*, 15 F.3d 1258, 1266 (3d Cir. 1994). "For state judgments concerning appeals of administrative decisions, a federal court looks to the law of the adjudicating state to determine their preclusive effect." *Spyridakis*, 2009 WL 3209478 at *4. In general, the Pennsylvania Supreme Court examines five factors in determining whether collateral estoppel applies in a particular case.[3]

In the unemployment compensation context the Pennsylvania Unemployment Compensation Law governs the application of collateral estoppel. On that issue, the law provides that "[n]o finding of fact or law, judgment, conclusion, or final order made with respect to a claim for unemployment compensation under [the Pennsylvania Unemployment Compensation Law] may be deemed to be conclusive or binding in any separate or subsequent action or

---

[3] In general, collateral estoppel applies under Pennsylvania law if:

> (1) The issue decided in the prior case is identical to the one presented in the later action;
> (2) There was a final adjudication on the merits;
> (3) The party against whom the plea is asserted was a party or in privity with a party in the prior case;
> (4) The party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and
> (5) The determination in the prior proceeding was essential to the judgment.

*Metro. Edison Co. v. Pennsylvania Pub. Util. Comm'n*, 767 F.3d 335, 351 (3d Cir. 2014) (citing *Office of Disciplinary Counsel v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2005)).

proceeding in another forum." 43 P.S. § 829; *see also Training Associates Corp. v. Unemployment Comp. Bd. of Review*, 101 A.3d 1225, 1234 (Pa. Commw. Ct. 2014) (noting that petitioner "concedes that the [UCBR's] findings of fact and conclusions of law are not conclusive or binding in any separate or subsequent proceedings in another forum under Section 509 of the UC Law, 43 P.S. § 829."). In short, under Pennsylvania law findings of fact and conclusions of law made with respect to claims for unemployment compensation do *not* have preclusive effect in subsequent actions, such as the one presently before this Court.

Defendant's Motion to Dismiss is based solely on the premise that the doctrine of collateral estoppel bars plaintiff from litigating in the present suit findings of fact and conclusions of law made by the UCBR and upheld by the Commonwealth Court in his unemployment compensation proceedings. As § 829 provides that such findings of fact and conclusions of law are not conclusive or binding in subsequent actions, the Court determines that plaintiff is not barred from litigating his claims and thus denies the Motion to Dismiss in its entirety.

## IV.    CONCLUSION

For the reasons stated above, the Court grants plaintiff's Motion for Clarification, treated as a Motion for Reconsideration, and, upon reconsideration of defendant's Motion to Dismiss, denies the Motion to Dismiss in its entirety.

An appropriate order follows.