### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL MATHIS, <br>            **Plaintiff,** <br><br>     v. <br><br> CHRISTIAN HEATING AND AIR <br> CONDITIONING, INC., <br>            **Defendant.** | CIVIL ACTION <br><br><br><br> NO. 13-3740 |

### M E M O R A N D U M

Dubois, J.                                        January 25, 2016

## I.   INTRODUCTION

This case arises from the termination of plaintiff Paul Mathis's employment as an installation mechanic with defendant Christian Heating and Air Conditioning, Inc. ("Christian HVAC"). Plaintiff alleges that his employment was terminated on the basis of religious discrimination and in retaliation for the exercise of his religious beliefs as an atheist. Specifically, plaintiff was fired for covering defendant's religious mission statement on the back of his employee I.D. badge.

In the Complaint, plaintiff asserts claims for unlawful termination, unlawful retaliation, and denial of a reasonable accommodation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"), and the Pennsylvania Human Relations Act, 43 Pa. Stat. §§ 951 et seq. ("PHRA"). Defendant contends, *inter alia*, that plaintiff was not subject to discrimination on the basis of his religious beliefs. Defendant also argues that accommodating plaintiff would substantially burden defendant's sincerely held religious beliefs in violation of the Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb et seq. ("RFRA").

Presently before the Court are Plaintiff's Motion for Partial Summary Judgment to Dismiss Defendant's Twenty-Eighth Affirmative Defense and the Motion for Summary

Judgment of Defendant Christian Heating & Air Conditioning, Inc. as to all claims.  For the following reasons, the Court grants plaintiff's Motion for Partial Summary Judgment and denies defendant's Motion for Summary Judgment.

## II.   BACKGROUND

### A.  Facts[1]

Defendant Christian HVAC is a for-profit corporation.  Def.'s Mot. for Summary Judgment, Statement of Uncontested Facts, ¶ 3 ("Def.'s Mot. SOF"); Pl.'s Resp. to Def.'s Statement of Uncontested Facts, ¶ 3 ("Pl.'s Resp. SOF").  Christian HVAC installs and services heating and air conditioning equipment.  Pl.'s Resp., Ex. B at 71:17-21 ("Peppelman Dep.").  David Peppelman is the owner, president, and general manager of Christian HVAC.  Def.'s Mot. SOF at ¶ 4.  Peppelman is a "born again" Christian, and he named his company "Christian Heating & Air Conditioning" "because it was dedicated to the Lord."  Def.'s Mot. SOF at ¶ 5; Pl.'s Resp. SOF at ¶ 5; Peppelman Dep. at 8:17-18, 56:6-13 (quoting from Christian HVAC employee handbook).  Christian HVAC employees drive red trucks with a dove logo, which symbolizes the Holy Spirit.  Pl.'s Resp., Ex. A at 21:5-16 ("Mathis Dep."); Peppelman Dep. at 56:4-5.  Peppelman believes that born again Christians have a duty to spread the word of God and encourage others to convert to Christianity.  Peppelman Dep. at 12:4-24.  In Peppelman's words, "people know I'm a Christian at work."  *Id.* at 13:2-3.

All mechanics employed by Christian HVAC are required to wear an I.D. badge that displays their name and a photograph on the front, and a portion of Christian HVAC's mission

---

[1] As required on a Motion for Summary Judgment, the facts are presented in the light most favorable to the nonmoving party.  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  "On cross-motions for summary judgment, the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made."  *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008).  The facts are taken from the parties' Statements of Undisputed Facts and the motion papers with attached exhibits.

statement on the back.  Def.'s Mot. SOF at ¶ 6; Pl.'s Resp. SOF at ¶ 6; Peppelman Dep. at 57:6-

58:2.  The portion of the mission statement displayed on the back of the I.D. badges reads:

> This company is not only a business, it is a ministry.  It is set on standards
> that are higher than man's own.  Our goal is to run this company in a way
> most pleasing to the Lord.
>
> Treating employees and customers as we would want to be treated along
> with running a business as if we are all part of one big family is our plan.

Def.'s Mot. SOF at ¶ 7; Pl.'s Resp. SOF at ¶ 7.  Peppelman testified that the purpose of the

mission statement is to communicate "what we believe and how we want to be perceived by the

public" and by customers.  Peppelman Dep. at 74:5-9.

Plaintiff Paul Mathis was employed as a heating and air conditioning installation

mechanic by Christian HVAC from April 26, 2010 until January 23 or 24, 2012.  Def.'s Mot.

SOF at ¶¶ 1-2; Pl.'s Resp. SOF at ¶¶ 1-2; Pl.'s Mot. for Partial Summary Judgment, Statement of

Uncontested Facts, ¶ 4 ("Pl.'s Mot. SOF").  Mathis identifies as an atheist.  Pl.'s Mot. SOF at

¶ 4.  Mathis testified that he does not have any religious beliefs, and that he has been an atheist

since before he reached adulthood.  Mathis Dep. at 81:23-83:12.  Mathis was not asked about his

religious beliefs during his interview with Christian HVAC, but during his employment Mathis

spoke to other Christian HVAC employees about the fact that he is an atheist.  *Id.* at 83:13-17,

84:3-21.  Mathis did not recall specifically informing anyone involved in the management of

Christian HVAC, including Peppelman, that he was an atheist.  *Id.* at 85:4-14.

Mathis testified that Peppelman often told him that he should attend church or implied

that Mathis would not have various problems if he attended church with Peppelman.  *Id.* at

29:22-23, 39:16-22, 40:1-12, 59:6-22.  Peppelman had these types of conversations with many of

his employees, not just Mathis.  *Id.* at 49:14-24; Pl.'s Resp. Ex. D at 12:5-23, 23:15-24:3

("Miller Dep."); Pl.'s Resp. Ex. E at 13:24-14:15, 16:22-17:17 ("McNulty Dep."); Pl.'s Resp.

Ex. F. at 12:15-13:11, 29:6-30:3 ("O'Brien Dep."); Pl.'s Resp. Ex. G at 11:10-21 ("Smith

Dep."). When Peppelman initiated these conversations, Mathis would respond that he did not

"appreciate you talking to me like this. I don't appreciate you trying to push your religion," and

Mathis would walk away. Mathis Dep. at 41:12-19, 84:23-85:3; Smith Dep. at 9:8-10:24.

Mathis told Peppelman "that I didn't appreciate it, that it was unwanted and unneeded, but"

Mathis "didn't really know that I needed to tell him I was an atheist for him to understand that

that was inappropriate behavior." *Id.* at 89:18-23. Mathis spoke to other employees and his

immediate supervisor, Rick Hoffman, about what he considered to be Peppelman's harassment.

Mathis Dep. at 44:2-44:8, 64:9-21. Mathis feared that he would be retaliated against if he

advertised his beliefs. *Id.* at 95:1-11.

At some point during his employment with Christian HVAC, Mathis placed a piece of

tape over the back of his I.D. badge in order to cover up the mission statement. *Id.* at 57:9-58:7.

Toward the end of his employment, Mathis received a new I.D. badge and also applied tape to

cover up the mission statement. *Id.* at 57:17-20. Mathis covered the mission statement because,

as an atheist, he did not agree with what he perceived to be its religious message. Pl.'s Mot. SOF

at ¶ 8; Def.'s Resp. SOF at ¶ 8; *see also* Mathis Dep. at 90:14-17, 91:14-17; O'Brien Dep. at

21:22-22:3. No one involved in the management of Christian HVAC had ever noticed that

Mathis had covered the mission statement on either of his badges until his last day of work,

January 23, 2012. Pl.'s Mot. SOF at ¶ 9; Def.'s Resp. SOF at ¶ 9. Mathis did tell other

employees—Ed McNulty, Gary O'Brien, Jr., Brandon Miller, and possibly his supervisor, Rick

Hoffman—that he had covered the mission statement because he did not agree with it and felt

that employees should not "have to wear a religious statement because of somebody else's

religion."  Mathis Dep. at 90:24-91:20.  Mathis did not object to working for a company named "Christian," and did not object to driving a truck with a dove logo.  *Id.* at 32:24-33:12.

On the morning of January 23, 2012, Peppelman overheard Mathis complaining to his partner, McNulty, that he was having trouble with the heater in a rental property that he owned. Mathis Dep. at 58:14-15, 59:6-18.  Peppelman interjected that Mathis "wouldn't have all those problems in [his] life if [he] went to church with" Peppelman.  *Id*. at 59:17-22.  Mathis responded that he had repeatedly asked Peppelman not to "push[] [his] religion" and insisted that his "issue with a rental property ha[d] absolutely nothing to do with [his] belief in God or not." *Id.* at 59:23-60:6.  Mathis then ended the conversation and walked away.  *Id.* at 60:6-7.

A few minutes later, while standing on a loading dock about four feet above Mathis, Peppelman noticed that something was on the back of Mathis's I.D. badge.  Pl.'s Mot. SOF at ¶ 10; Def.'s Resp. SOF at ¶ 10; Mathis Dep. at 60:8-16.  Peppelman asked to examine the badge. Pl.'s Mot. SOF at ¶ 10; Def.'s Resp. SOF at ¶ 10; Mathis Dep. at 60:17.  Mathis showed him the badge, and Peppelman asked what was on the back.  Mathis Dep. at 60:18-19.  Mathis responded that he had covered the back of the I.D. badge with tape because he did not agree with the mission statement. *Id.* at 60:19-22; Pl.'s Mot. SOF at ¶ 11.  In response, Peppelman told Mathis, "You're going to wear it or you're done."  Mathis Dep. at 60:23-24; Peppelman Dep. at 37:9-38:2.

Mathis again told Peppelman that he disagreed with him "trying to push [his] religion on" him.  Peppelman Dep. at 37:9-11; McNulty Dep. at 23:15-20; Smith Dep. at 15:8-19.  Mathis offered to wear the badge with the tape on the back, which he believed complied with company policy of wearing the badge.  Mathis Dep. at 62:7-9.  Peppelman then reiterated that if Mathis did not want to wear the badge with both sides uncovered, then he was "done," and told Mathis

that, by refusing to wear the badge as required by Christian HVAC company policy, Mathis had "quit" his employment with Christian HVAC.  Peppelman Dep. at 34:15-24 (transcription of video used at deposition); Mathis Dep. at 61:2-5, 61:20-24.  Mathis repeatedly said that he "disagreed" that he was quitting.  Peppelman Dep. at 34:15-19 (transcription of video used at deposition), 35:9-14, 36:23-37:7; Mathis Dep. at 61:3-7, 64:5-8.  According to Mathis, Peppelman took the badge from Mathis before Mathis could decide whether to remove the tape. Mathis Dep. 63:1-4.  Mathis's employment was then terminated.  At that point, Mathis was driven home by another employee.  Peppelman Dep. at 38:5-9.  On January 24, 2012, Mathis returned to work to give back uniforms and other property of Christian HVAC.  Pl.'s Resp. Ex. C at 40:18-20.

At his deposition, Peppelman testified that Mathis "wasn't terminated.  It was, if you don't wear it, you're gone," and that there was no difference between Mathis quitting and being terminated because "[i]f he says he doesn't want to wear [the badge displaying the mission statement] and he won't wear it, to me, that's quitting."  Peppelman Dep. at 36:21-22, 39:8-12. Peppelman also testified that if Mathis had removed the tape from the badge, he would still be employed and likely would not have been disciplined.  *Id.* at 40:5-7, 40:17-21.  Peppelman confirmed that the only choice Mathis had was to wear the badge without the tape if he wanted to continue to work at Christian HVAC.  *Id.* at 41:20-42:10.

Mathis testified that he was terminated or "fired" because he "would not wear [the badge] with the mission statement uncovered."  Mathis Dep. at 102:11-13.  He "was forced to" remove the tape "or lose [his] job."  *Id.* at 103:22-23.

**B.  Procedural History**

After Mathis ceased to work for Christian HVAC, he applied to the Pennsylvania Unemployment Compensation Service Center for unemployment compensation benefits and

received a Notice of Determination denying benefits dated February 8, 2012.  *Mathis v.*

*Christian Heating and Air Conditioning, Inc.*, 60 F. Supp. 3d 566, 571 (E.D. Pa. 2014).  Mathis

appealed the determination and a hearing was held before a referee on March 21, 2012.  *Id.*

However, Mathis failed to appear at the hearing and the referee denied him benefits.  *Id.*  Mathis

then appealed to the Unemployment Compensation Board of Review ("UCBR"), explained the

reasons for his failure to attend the hearing before the referee, and requested, and was granted, a

remand hearing.  *Id.*  On June 12, 2012, Mathis appeared at the remand hearing with counsel, as

did David Peppelman and Anita Peppelman, the administrator and CFO of Christian HVAC. *Id.*

at 572.  On July 18, 2012, the UCBR issued a Decision and Order concluding that Mathis

voluntarily quit his employment with Christian HVAC.  *Id.*[2]

Mathis timely filed an appeal for review of the UCBR's order to the Pennsylvania

Commonwealth Court.  *Id.*  That court upheld the findings of the UCBR, concluding that there

was substantial evidence to support the UCBR's conclusion that Mathis had been offered a "real

choice between [the] alternatives" of removing the tape and continuing employment, or refusing

to remove the tape and thereby ending his employment.[3]  *Mathis v. Unemployment*

*Compensation Bd. of Review*, 64 A.3d 293, 299 (Pa. Cmmw. Ct. 2013).  The Court also found

that Mathis failed to prove that he voluntarily quit his employment for "a necessitous and

compelling reason" because he presented no evidence of his sincere religious beliefs nor had he

described "any actual conflict between a religious belief and Employer's requirement that the

identification badge bearing the mission statement be worn."  *Id.* at 300-01.

---

[2] The Decision and Order relied on 43 Pa. Cons. Stat. Ann. § 802(b), which provides "An employee shall be ineligible for compensation for any week. . . in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature, irrespective of whether or not such work is in "employment" as defined in this act."  *Mathis*, 60 F. Supp. 3d at 572.

[3] The Commonwealth Court's scope of review was limited to determining whether necessary findings of fact were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated.  *Mathis v. Unemployment Compensation Bd. of Review*, 64 A.3d 293, 297 n.5 (Pa. Cmmw. Ct. 2013).

Mathis next dual-filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) and with the Pennsylvania Human Relations Commission alleging that he was discharged from his employment as a result of discrimination based on religion, retaliation, and failure to provide a reasonable accommodation. *Mathis*, 60 F. Supp. 3d at 573; Compl. ¶ 31. On March 29, 2013, the EEOC issued a Dismissal and Notice of Rights and notified plaintiff of his right to file suit within 90 days. *Id.*

On June 27, 2013, Mathis filed the present suit in this Court. *Id.* In the Complaint, he asserts claims under Title VII and the PHRA. He avers that (1) he was denied a reasonable religious accommodation by defendant and (2) he was terminated in retaliation for his religious beliefs, his requested accommodation, and his complaints about "what he felt was religious discrimination." *Id.*

On October 1, 2013, defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). By Memorandum and Order dated October 7, 2014, this Court ruled that plaintiff's failure to accommodate claim was barred by collateral estoppel. *Id.* at 580. The Court also found that, in connection with his retaliation claim, plaintiff was estopped from re-litigating the UCBR's and the Commonwealth Court of Pennsylvania's "pure factual finding that he had chosen to leave his employment rather than remove the tape from his identification badge," but otherwise denied the Motion to Dismiss with respect to plaintiff's retaliation claim. *Id.* at 582.

On February 20, 2015, plaintiff filed a Motion for Clarification of the Court's Memorandum and Order of October 7, 2014, requesting that the Court address whether plaintiff was precluded from arguing that he was actually terminated by his employer as a result of engaging in protected activity. *Mathis v. Christian Heating and Air Conditioning, Inc.*, 91 F.

Supp. 3d 651, 655 (E.D. Pa. 2015).  Plaintiff cited for the first time a provision of Pennsylvania

Unemployment Compensation Law, 43 P.S. § 829, which provides in relevant part that:

> No finding of fact or law, judgment, conclusion or final order made with
> respect to a claim for unemployment compensation under this act may be
> deemed to be conclusive or binding in any separate or subsequent action
> or proceeding in another forum.

*Id.*  The Court treated this motion as a motion for reconsideration, granted reconsideration, and

reversed its prior ruling on defendant's motion to dismiss.  *Id.* at 656.  Because § 829 prohibits

findings of fact and conclusions of law made by the UCBR and upheld by the Commonwealth

Court in plaintiff's unemployment compensation proceedings from being conclusive or binding

in subsequent actions, the Court determined that plaintiff is not barred from litigating all factual

issues relevant to both of his claims.  *Id.* at 658.

By Order dated May 20, 2015, this Court granted defendant leave to amend its Answer to

add the following affirmative defense: "Enforcement of the plaintiff's claims would substantially

burden the defendant's free exercise of religion in violation of the Free Exercise Clause of the

United States Constitution Amendment I, and the Religious Freedom and Restoration Act, 42

U.S.C. § 2000bb-1 et seq."  *See* Am. Answer at 13.

Presently before the Court are two motions: (1) plaintiff's Motion for Partial Summary

Judgment as to defendant's affirmative defense under RFRA (filed June 8, 2015) and

(2) defendant's Motion for Summary Judgment as to all of plaintiff's claims (filed July 20,

2015).  For the following reasons, the Court grants plaintiff's Motion[4] and denies defendant's

Motion.

---

[4] Plaintiff's Motion states that "If this Court rejects Defendant's argument that Plaintiff was allegedly terminated, it
is respectfully submitted that the remaining issues are so clear, that *Plaintiff* should be entitled to summary
judgment."  Pl.'s Mot. at 12-13 (emphasis in original).  Rule 56(f) provides in relevant part that "[a]fter giving
notice and reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant. . . ."  Fed. R.
Civ. P. 56(f).  The Court declines to exercise its authority under this provision.

### III.   LEGAL STANDARD

The Court will grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is material when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether . . . there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249. In considering a motion for summary judgment, "the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

### IV.   DISCUSSION

#### A.   Plaintiff's Motion for Partial Summary Judgment as to Defendant's Affirmative Defense under RFRA

Plaintiff's Motion for Summary Judgment seeks dismissal of defendant's affirmative defense under RFRA that enforcement of Title VII and the PHRA in this case would violate defendant's free exercise rights. Pl.'s Mot. at 1. Plaintiff argues that (1) RFRA is not available in suits between private parties because RFRA protects individuals only from the federal government's burden on the free exercise of religion and (2) if RFRA does apply, then the accommodation sought in this case under Title VII is the least restrictive means of accomplishing a compelling governmental interest in eradicating workplace discrimination. *Id.* at 3, 8. In support of the first argument, plaintiff relies on the decisions of three United States Courts of

Appeals that have held that RFRA is not available as a defense in an action between private

parties.  *See Listecki v. Official Comm. of Unsecured Creditors*, 780 F.3d 731 (7th Cir. 2015)

(holding RFRA requires the government to be a party in order to apply and thus is not available

in suit between private parties); *Gen. Conference Corp. of Seventh-Day Adventists v. McGill*, 617

F.3d 402 (6th Cir. 2010) (same); *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826 (9th

Cir. 1999) (same).

Defendant urges the Court to follow the logic of a decision from the United States Court

of Appeals for the Second Circuit, which concerned claims under the Age Discrimination in

Employment Act, 29 U.S.C. §§ 621 et seq., ("ADEA").  *See Hankins v. Lyght*, 441 F.3d 96 (2d

Cir. 2006) (holding RFRA available as a defense to private suit under the ADEA because that

statute is enforceable by both the government and private plaintiffs).  Defendant argues that,

because Title VII is enforceable by both private plaintiffs and the EEOC—a government

agency—there is sufficient "government activity" to trigger the availability of RFRA.  Def.'s

Resp. at 3.  Defendant alternatively argues that this Court cannot determine the factual question

of whether a compelling governmental interest is being pursued with the least restrictive means

at this stage.  *Id* at 8-9.[5]

The Third Circuit has not addressed the question of whether RFRA can be raised as a

defense in a lawsuit brought by an individual, and not the government.  For the following

reasons, the Court agrees with the majority interpretation that RFRA only applies to suits in

_____

[5] RFRA only applies to burdens on religious exercise that are imposed by the federal government, *see Gonzalez v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 436 (2006), and does not have any effect on burdens imposed by an individual state, *City of Boerne v. Flores*, 521 U.S. 507, 532-36 (1997) (holding that the enactment of RFRA, as applied to the states, exceeded Congress's remedial powers under § 5 of the Fourteenth Amendment).  In this case, plaintiff asserts claims under both Title VII and the PHRA.  Defendant's success on the merits of its RFRA defense could only bar the enforcement of plaintiff's Title VII claim; RFRA has no effect on the defendant's obligation to accommodate plaintiff under the PHRA.  *See also Rweyemamu v. Cote*, 520 F.3d 198, 203 n.2 (noting "strong policy reasons" against permitting RFRA defenses in purely private actions because it would ensure "disparate treatment of federal- and state-law claims" under RFRA and *N.L.R.B. v. Catholic Bishop*, 440 U.S. 490 (1979), respectively).

which the government is a party, and grants plaintiff's Motion to strike the affirmative defense

based on RFRA.

The interpretation of any statute begins with the text. *Allen ex rel. Martin v. LaSalle*

*Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011).  RFRA provides

> "Government shall not substantially burden a person's exercise of religion
> even if the burden results from a rule of general applicability, except . . . .
> Government may substantially burden a person's exercise of religion only
> if it demonstrates that application of the burden to the person--
>
> (1)   is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling
> governmental interest . . ."

42 U.S.C. § 2000bb-1.  RFRA defines "government" to include "a branch, department,

agency, instrumentality, and official (or other person acting under color of law) of the United

States." 42 U.S.C. § 2000bb-2(1).  RFRA "applies to all Federal law, and the implementation of

that law."  42 U.S.C. § 2000bb-3.  RFRA's "Judicial relief" section provides that "[a] person

may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain

appropriate relief against a government."  42 U.S.C. § 2000cc-2.

Three United States Courts of Appeals have concluded that this language makes clear

that Congress intended RFRA to apply only in cases where the "government" is a party.

*Listecki*, 780 F.3d at 737 (7th Cir. 2015); *McGill*, 617 F.3d at 411-12 (6th Cir. 2010); *Sutton*, 192

F.3d at 834 (9th Cir. 1999).  Those decisions emphasize that the statute prohibits the

"Government" from substantially burdening the free exercise of religion except when that burden

is justified by a "compelling *governmental* interest."  42 U.S.C. § 2000bb-1 (emphasis added);

*McGill*, 617 F.3d at 411.  The statute provides relief "against a *government*" to parties asserting

RFRA as a claim or defense.  42 U.S.C. § 2000cc-2 (emphasis added); *Listecki*, 780 F.3d at 737

("If the government is not a party, no one can provide the appropriate relief.").  In addition,

Congress emphasized the importance of the government's presence in the findings and purposes section of RFRA. Specifically, Congress found that "*governments* should not substantially burden religious exercise without compelling justification" and the statute provides that one of its purposes is to "provide a claim or defense to persons whose religious exercise is substantially burdened *by government*."[6] 42 U.S.C. § 2000bb (emphasis added); *McGill*, 617 F.3d at 411.

Furthermore, the burden-shifting framework set forth in RFRA requires "the *Government*" to "demonstrate[]" that its actions constitute the least restrictive means of pursuing a compelling governmental interest. 42 U.S.C. § 2000bb-1 (emphasis added). RFRA defines "demonstrates" as "meets the burdens of going forward with the evidence and of persuasion." 42 U.S.C. § 2000bb-2(3). "It is self-evident that the government cannot meet its burden" under this framework "if it is not a party to the suit." *Listecki*, 780 F.3d at 736. "A private party cannot step into the shoes of the 'government' and demonstrate a compelling governmental interest and that it is the least restrictive means of furthering that compelling governmental interest because the statute explicitly says that the 'government' must make this showing." *Id*; *see also Rweyemamu v. Cote*, 520 F.3d 198, 203 n.2 (2d Cir. 2008) ("Where, as here, the government is not a party, it cannot 'go[] forward' with any evidence." (quoting *Hankins*, 441 F.3d at 114-15 (Sotomayor, J. dissenting))). The Court finds this reading of the statutory text persuasive.

---

[6] It should be further noted that RFRA does not expressly include private actors within its reach. When Congress has intended to regulate private actors in statutes, such as Title VII, it has done so explicitly. *See* 42 U.S.C. § 2000e-(b) ("The term 'employer' means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person."). The Ninth Circuit found the exclusion of private actors meaningful in concluding that RFRA is only available when the government is a party. *Sutton*, 192 F.3d at 834 (comparing RFRA to Title VII and the Americans with Disabilities Act, and concluding that "this court must give effect to" the fact that "Congress chose not to include similar wording in RFRA."); *see also In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 373 (3d Cir. 2012) ("Where the legislature has inserted a provision in only one of two statutes that deal with closely related subject matter, it is reasonable to infer that the failure to include that provision in the other statute was deliberate rather than inadvertent." (quoting 2B *Sutherland Statutes and Statutory Construction* § 51.2)).

If there were any doubt as to the clarity of RFRA's language, its legislative history confirms that the government must be a party in order for the statute to apply.  *See In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009) ("Where the statutory language does not express Congress's intent unequivocally, a court traditionally refers to the legislative history . . . in an attempt to determine the congressional purpose.").  The Senate Committee on the Judiciary issued a report on RFRA that "began by stating that the nation was founded by those with a conviction that they should be free to practice their religion 'free from Government interference' and 'Government actions…' In describing RFRA's purpose, the report refers to 'government actions,' 'only governmental actions,' and 'every government action.'"  *Listecki*, 780 F.3d at 737 (quoting S. Rep. No. 103-111, at 4, 8-9 (1993), reprinted by 1993 U.S.C.C.A.N. 1892, 1894).

Defendant relies on the Second Circuit's interpretation of RFRA in *Hankins*, 441 F.3d at 103-04.  *Hankins* involved a suit brought under the ADEA.  The Second Circuit there permitted a private defendant to assert a RFRA defense because, hypothetically, the government, through the EEOC, *could* have been a party to the action.  *Id.* at 103.  This Court does not find the logic of *Hankins* convincing.  First, *Hankins* relies on the assumption that "the substance of" federal statutory discrimination "prohibitions cannot change depending on whether it is enforced by the EEOC or an aggrieved private party."  *Id.* at 103.  There is no authority for such an assumption. Indeed, as then-Judge Sotomayor explained in her dissent, "[i]f RFRA amends all federal statutes as they apply to suits in which the government is a party, then the substance of [a statute's] prohibitions most certainly *can* change depending on who enforces it."  *Id.* at 115 (Sotomayor, J., dissenting) (emphasis in original).[7]  Moreover, another panel of the Second Circuit has since

---

[7] In other contexts, it is well settled that the government and private parties seeking to enforce the same law do not have the burden of proving identical elements.  *E.g. GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 206 n.6 (3d

retreated from the holding in *Hankins* because it could "not understand how" RFRA "can apply to a suit between private parties, regardless of whether the government is capable of enforcing the statute at issue." *Rweyemamu*, 520 F.3d at 203 n.2.

Accordingly, the Court grants plaintiff's Motion for Partial Summary Judgment and strikes defendant's affirmative defense under RFRA from its Amended Answer.

### B. Defendant's Motion for Summary Judgment as to Plaintiff's Title VII and PHRA Claims

Title VII and the PHRA are interpreted co-extensively. *Thompson v. Kellogg's USA*, 619 F. App'x 141, 144 n.2 (3d Cir. 2015). Title VII provides, in relevant part, that "It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).[8] This provision forbids employers from discriminating against an employee because of that employee's religion. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 135 S. Ct. 2028, 2032 (2015). Under Title VII, "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

---

Cir. 2001) (noting that private plaintiffs must prove reliance, loss causation, and damages to recover for securities fraud under § 10(b) of the Securities Exchange Act and Rule 10b-5, but that the government, through the Securities and Exchange Commission, does not have the burden of proving these elements in a securities fraud enforcement action).

[8] The PHRA provides "It shall be an unlawful discriminatory practice. . . (a) For any employer because of the . . . religious creed . . . of any individual or independent contractor, to refuse to hire or employ or contract with, or to bar or discharge from employment such individual or independent contractor, or to otherwise discriminate against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract . . . (d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act. . . ." 43 Pa. Stat. § 955.

"In the Third Circuit, employees may rely on two different theories to establish a claim for religious discrimination: 'disparate treatment' on account of religion, or 'failure to accommodate' religious beliefs." *Wallace v. City of Philadelphia*, No. 06 Civ. 4236, 2010 WL 1730850, at *6 (E.D. Pa. Apr. 26, 2010) (quoting *Abramson v. William Paterson College of N.J.*, 260 F.3d 265, 281 (3d Cir. 2001)). An employee may also claim that his employer retaliated against him for opposing an employment practice that he reasonably believed to be unlawful under Title VII. 42 U.S.C. § 2000e-3(a) (defining "unlawful employment practice" to include discrimination against an individual "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has" complained of discrimination).

In this case, plaintiff asserts claims under three theories for (1) termination due to his religious beliefs, (2) denial of a reasonable religious accommodation, and (3) termination in retaliation for requesting a reasonable religious accommodation. Pl.'s Resp. at 2. Defendant moves for summary judgment as to all of plaintiff's claims and seeks dismissal of this action, but defendant's Motion only presents arguments concerning the failure to accommodate and retaliation theories. Def.'s Mot. at 8, 11, 13. Because it is defendant's Motion that is presently before the Court, the Court will only address these two theories. For the following reasons, the Court denies defendant's Motion.

      1.   Failure to Accommodate

To establish a *prima facie* failure to accommodate claim, "the employee must show: (1) she holds a sincere religious belief that conflicts with a job requirement; (2) she informed her employer of the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010). "The burden then shifts to the employer to show either (1) it made a good-faith effort to reasonably accommodate

the religious belief, or (2) such an accommodation would work an undue hardship upon the employer and its business." *Id.* (quotations and citation omitted).  Defendant argues that plaintiff cannot establish the first two elements of a *prima facie* case.  The Court disagrees.

#### *(a.) First Element*

There is no dispute that plaintiff's atheistic beliefs are sincere.  The Oxford English Dictionary defines "atheist" as: "A person who disbelieves or lacks belief in the existence of God or gods."  Plaintiff testified that he has been an atheist for most of his life, that he has no religious beliefs, and that he rejected any practice of organized religion before he reached adulthood.  Mathis Dep. at 81:23-83:12.  Under Title VII, atheists are entitled to the exact same protection as members of other religions.  *E.g.*, *Reed v. Great Lakes Companies, Inc.*, 330 F.3d 931, 934 (7th Cir. 2003) ("[A]n atheist. . . cannot be fired because his employer dislikes atheists. If we think of religion as taking a position on divinity, then atheism is indeed a form of religion.").  Defendant concedes that plaintiff "may be sincere in his atheistic beliefs."  Def.'s Mot. at 10.

However, defendant contends that "there is no evidence that [plaintiff's] beliefs conflict with a job requirement."  *Id.*  The record and common sense belie this assertion.  The parties agree that it was a job requirement for plaintiff to wear his I.D. badge, with both sides uncovered, at all times.  Pl.'s Mot. SOF ¶ 6; Def.'s Resp. SOF ¶ 6; Peppelman Dep. at 57:6-58:2. The parties also agree that the mission statement displayed on the I.D. badge explicitly refers to "pleasing. . . the Lord" and invokes "standards that are higher than man's own." Def.'s Mot. SOF at ¶ 7; Pl.'s Resp. SOF at ¶ 7.  Plaintiff also testified that he did not believe in the mission statement and that he disagreed with being compelled "to wear a religious statement" at work "because of somebody else's religion."  Mathis Dep. 91:14-17.  Plaintiff also consistently

objected to Peppelman's comments about attending church.  *Id.* at 41:12-19, 84:23-85:3; Smith Dep. at 9:8-10:24.

A reasonable trier of fact could conclude that a statement that references "the Lord" and "standards that are higher than man's own" conflicts with the views of an individual "who disbelieves or lacks belief in the existence of God."  *Cf. Schwartzberg v. Mellon Bank, N.A.*, No. 02 Civ. 1006, 2008 WL 111984, at *9-10 (W.D. Pa. Jan. 8, 2008) *aff'd,* 307 F. App'x 676 (3d Cir. 2009) (granting summary judgment for employer because employee had no evidence that his religious "belief that members of the same sex should not engage in sexual relations with each other" conflicted with employer's sponsored activities promoting tolerance for homosexuality because plaintiff's participation in those activities was "strictly voluntary").  Accordingly, the Court finds that plaintiff has adduced sufficient evidence to present a genuine dispute of material fact concerning the first element of his failure to accommodate claim.

### (b.) Second Element

The second element requires a plaintiff to have informed his employer of the conflict between a job requirement and his beliefs.  *GEO Grp.*, 616 F.3d at 271.  Defendant argues that plaintiff "never informed his employer that he was an atheist, and did not inform the employer about his beliefs conflicting with a job requirement."  Def.'s Mot. at 10.  Plaintiff testified that he did not recall ever informing anyone involved in the management of Christian HVAC, including Peppelman, that he was an atheist.  Mathis Dep. at 85:4-14.  However, the record presents a genuine dispute of material fact as to whether plaintiff informed defendant that he disagreed with the mission statement on religious grounds.

On this issue, plaintiff testified that on his last day of work, after Peppelman discovered the tape on his I.D. badge, he repeated his objection to Peppelman pushing his religion and

explained that he covered the mission statement based on a disagreement with its message.  *Id.* at 60:19-22, 97:13-98:8; Pl.'s Mot. SOF at ¶ 11.  At his deposition, Peppelman agreed that plaintiff had asked him to stop pushing his religion during this conversation.  Peppelman Dep. at 37:9-11.  However, Peppelman contradicted himself when he testified that he did not recall having any previous religious-themed discussions with Mathis, that he never told Mathis to go to church, and that he did not know that Mathis was an atheist.  Peppelman Dep. at 16:10-15, 17:20-18:4, 18:19-24.

Plaintiff also testified that he told his supervisor, Rick Hoffman, that he disagreed with the mission statement because of its religious nature.  Mathis Dep. at 90:24-91:20.  Defendant submitted an affidavit from Hoffman which states that he does not remember any discussion with plaintiff about religion or the I.D. badge.  Def.'s Mot. Ex. D.

The Court cannot resolve these factual disputes at the summary judgment stage.  In short, plaintiff has presented sufficient evidence for a reasonable jury to conclude that he informed defendant of his religious-based objection to wearing the required I.D. badge with defendant's mission statement on the reverse side.

Plaintiff has also presented evidence that would permit a reasonable factfinder to infer that Peppelman failed to accommodate plaintiff "because" of plaintiff's atheism.  The Supreme Court recently explained that a plaintiff claiming intentional religious discrimination under Title VII need not establish that he provided his employer with actual knowledge of his need for an accommodation.  *Abercrombie*, 135 S. Ct. at 2032.  Title VII "does not impose a knowledge requirement" on the employer.  *Id.*  Instead, the statute

> prohibits certain *motives*, regardless of the state of the actor's knowledge.
> Motive and knowledge are separate concepts.  An employer who has
> actual knowledge of the need for an accommodation does not violate Title
> VII by refusing to hire an applicant if avoiding that accommodation is not

> his *motive*.  Conversely, an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed.

*Id.* at 2033 (emphasis in original).

Plaintiff correctly argues that Title VII, as interpreted in *Abercrombie*, does not require him to prove that he advertised his atheistic beliefs to his employer, nor does it require that he prove that he phrased his disagreement with the mission statement in terms of his atheism.  *See* Pl.'s Resp. at 18.  Plaintiff need only show that defendant acted upon an improper motive when it terminated his employment and/or when it failed to accommodate him.  *See Abercrombie*, 135 S. Ct. at 2032.  ("A request for accommodation, or the employer's certainty that the practice exists, may make it easier to infer motive, but is not a necessary condition of liability.").

A reasonable jury could conclude that defendant refused to accommodate plaintiff "because of" plaintiff's beliefs.  Plaintiff told Peppelman that he "didn't appreciate it" when Peppelman encouraged him to attend church and that these invitations were "unwanted and unneeded."  Mathis Dep. at 89:18-23.  On plaintiff's last day of work, Peppelman told plaintiff that he "wouldn't have all those problems in [his] life if [he] went to church with" Peppelman. *Id*. at 59:17-22.  Plaintiff reiterated his objections to what he considered to be Peppelman "pushing [his] religion" and insisted that his "issue with a rental property ha[d] absolutely nothing to do with [his] belief in God or not."  *Id.* at 59:24-60:6.  Peppelman then discovered that plaintiff had covered the mission statement on his I.D. badge and Peppelman almost immediately told plaintiff "You're going to wear it or you're done."  *Id.* at 60:23-24; Peppelman Dep. at 37:9-38:2.  Plaintiff repeated that he disagreed with Peppelman "trying to push [his] religion on" him. Peppelman Dep. at 37:9-11.  Peppelman then insisted that plaintiff's refusal to wear the badge as required by defendant's policy meant that plaintiff had "quit" his employment with defendant.

Peppelman Dep. at 34:15-24; Mathis Dep. at 61:2-5; 61:20-24.  Peppelman took the badge from

plaintiff before plaintiff could decide whether to remove the tape.  Mathis Dep. 63:1-4.

A reasonable trier of fact could infer from this evidence that Peppelman terminated

plaintiff's employment "with the motive of avoiding accommodation," in violation of Title VII.

*See Abercrombie*, 135 S. Ct. at 2033; Peppelman Dep. at 37:9-11.  It would be reasonable to

infer that, in context, Peppelman understood that plaintiff voiced his objection to the mission

statement based on his religious beliefs.  A factfinder could also take notice of the lack of

evidence that defendant attempted to have any constructive conversation with plaintiff about

plaintiff's disagreement with the mission statement to infer that Peppelman preferred to avoid

accommodating plaintiff's beliefs.  Accordingly, the Court concludes that there is a genuine

dispute of material fact concerning the second element of plaintiff's failure to accommodate

claim.

### (c.) Defendant's Burden

Because plaintiff has presented sufficient evidence in support of his *prima facie* case, the

burden shifts to defendant to prove either that it "made a good-faith effort to reasonably

accommodate" plaintiff's beliefs or that the requested accommodation "would work an undue

hardship upon" defendant's ability to conduct business.  *GEO Grp., Inc.*, 616 F.3d at 271.

Defendant attempts to meet its burden only under the undue hardship alternative.  *See* Def.'s

Mot. at 11.  An "undue hardship" is one that results in a cost to the employer that is more than *de*

*minimis*.  *Id.* at 273.  "Both economic and non-economic costs can pose an undue hardship upon

employers." *Id.* (citations omitted).  In deciding whether undue hardship exists, a court

"focus[es] on the specific context of each case, looking to both the fact as well as the magnitude

of the alleged undue hardship." *Webb v. City of Philadelphia*, 562 F.3d 256, 260 (3d Cir. 2009)

(citation omitted).  This inquiry is fact-specific and ordinarily is best left to the fact finder.
*Baker v. The Home Depot*, 445 F.3d 541, 548 (2d Cir. 2006).

Courts have concluded that accommodations requiring overtime pay, replacement
employees, additional contributions to insurance and pension funds, compromises of scheduling
or seniority systems, or risking regulatory or criminal sanctions can all constitute undue
hardships for an employer.  *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977);
*Webb*, 562 F.3d at 260; *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 134 (1st Cir. 2004);
*Wren v. T.I.M.E.-D.C., Inc.*, 595 F.2d 441, 445 (8th Cir. 1979).  Some courts have also found
that accommodations to an employer's neutral dress or grooming policies could pose an undue
hardship where the employer's policy "is not directed at religion" and is connected to the
employer's efforts to promote business or protect employee safety.  *See, e.g.*, *Wallace*, 2010 WL
1730850, at *7 (concluding that religious accommodation would impose undue hardship on
police department's "commitment to a neutral appearances policy."); *Hussein v. The Waldorf-
Astoria*, 134 F. Supp. 2d 591, 599 (S.D.N.Y. 2001) *aff'd sub nom. Hussein v. Waldorf Astoria
Hotel*, 31 F. App'x 740 (2d Cir. 2002) (citing cases).  Courts may be more likely to find undue
hardship where the employee seeks a full exemption and will not settle for an accommodation
that is a compromise with the employer's stated policy.  *See United States v. New York City
Transit Auth.*, No. 04 Civ. 4237, 2010 WL 3855191, at *20-22 (E.D.N.Y. Sept. 28, 2010)
(discussing cases and concluding that employees' proposed compromise accommodation could
not be proven an undue hardship as a matter of law).

In this case, defendant argues that "the accommodation sought i.e. removal of the
religious message" would require the "suppression of free speech and the free exercise of
religion," which "is not to be taken lightly."  Def.'s Mot. at 11.  Defendant "submit[s] that by

22

compelling the employer in this case to accommodate an employee who is intolerant of his employer's religious beliefs would constitute such an 'undue hardship' on the employer [and thus] require[es] no accommodations under the circumstances" presented by this case. *Id.* The Court rejects this argument because a reasonable jury could conclude that defendant failed to make a good faith effort to accommodate plaintiff's belief and that plaintiff's requested accommodation would not impose an undue hardship on defendant's business.

Defendant responds to the inquiry into whether the accommodation that plaintiff sought was reasonable by arguing that the plaintiff himself was reasonable or "intolerant." *Id.* Defendant also misunderstands the accommodation requested by plaintiff. On his last day of work, plaintiff did not demand that the mission statement to be removed from all employees' I.D. badges, nor did plaintiff refuse to wear the badge because of the mission statement. Rather, plaintiff sought only to keep the piece of tape concealing the mission statement on the back of his badge alone, and was willing to continue displaying the front part of the badge with his name and picture. *See* Mathis Dep. at 62:7-9. This accommodation is less burdensome than the one defendant presents in its Motion, and is a compromise with defendant's stated policy that employees must wear I.D. badges at all times. Peppelman Dep. at 57:6-58:2.

In addition, defendant does not claim that it is a religious organization entitled to exemption from Title VII and cites no authority for the proposition that any burden on a secular employer's preferred method of exercising its religious beliefs constitutes an undue hardship as a matter of law. *See* 42 U.S.C. § 2000e-1(a) (exempting religious organizations from prohibition of religious discrimination). And defendant's I.D. badge policy is not neutral because it requires employees to bear the defendant's religious message.

Finally, defendant does not explain how plaintiff's requested accommodation would impose more than a *de minimis* cost on its business.  In this case, permitting plaintiff to use a piece of tape is a *de minimis* financial burden for defendant to bear.  Defendant has presented no evidence showing that its business would suffer or be made more difficult if it permitted plaintiff to cover the mission statement.   Peppelman stated that the purpose of the mission statement is to communicate "what we believe and how we want to be perceived by the public" and by customers, but defendant has not shown how the public perception of Christian HVAC would be harmed if only plaintiff's I.D. badge did not display the mission statement on the reverse side.  Peppelman Dep. at 74:5-9.  Nor has defendant alleged any harm to its reputation as a result of plaintiff wearing the I.D. badge with the mission statement covered for some time before his termination.  Based on this record, the Court concludes that a reasonable jury could decide this issue in plaintiff's favor.  The question of whether the accommodation imposes an undue hardship should be determined by a trier of fact.

For the foregoing reasons, the Court denies defendant's Motion for Summary Judgment with regard to plaintiff's failure to accommodate claim.

2.   Retaliation

"A *prima facie* case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015). "With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who oppose discrimination made unlawful by Title VII (the 'opposition clause')."  *Moore v. City of*

*Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) (citation omitted).  The employee's opposition

must be based on an objectively reasonable and good faith belief that the activity he opposes is

unlawful under Title VII.  *Clark County v. Breeden*, 532 U.S. 268, 271 (2001) (per curiam).

"[O]pposition to an illegal employment practice must identify the employer and the practice—if

not specifically, at least by context," and can include "'informal protests of discriminatory

employment practices, including making complaints to management.'"  *Curay-Cramer v.*

*Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006) (quoting *Barber*

*v. CSX Distrib. Servs.*, 68 F.3d 694 (3d Cir. 1995)).

   Defendant challenges the first element of plaintiff's retaliation claim by arguing that

plaintiff's "lack of regard for his employer's religious beliefs, and the company's mission

statement, cannot be equated with a reasonable belief, in good faith, that he engaged in protected

activity."  Def.'s Mot. at 12.  The Court rejects this argument.  A trier of fact could conclude that

plaintiff had a reasonable belief that the activities he opposed—Peppelman's recommendations

that he attend church and defendant's requirement that he display its religious mission statement

on his I.D. badge—could be unlawful under Title VII.  Plaintiff has also adduced evidence that

he notified his superior, Rick Hoffman, that he disagreed with the mission statement's message

and with Peppelman's statements about religion.  Mathis Dep. at 44:2-44:8, 64:9-21, 90:24-

91:20.  Additionally, on plaintiff's last day of work he informed Peppelman that he covered his

I.D. badge because he disagreed with the mission statement, and volunteered that this was related

to his frustration with Peppelman's suggestions that plaintiff attend church.  Pl.'s Mot. SOF at

¶ 11; Mathis Dep. at 60:19-22; Peppelman Dep. at 37:9-11; McNulty Dep. at 23:18-20; Smith

Dep. 15:8-19.  In context, a reasonable factfinder could infer that Peppelman understood that

plaintiff had a religious-based objection to his proselytizing and to defendant's mission statement

that invoked "the Lord" and "standards that are higher than man's own." This is sufficient to create a genuine dispute of material fact regarding whether plaintiff opposed a specific employment practice on religious grounds, and thus engaged in protected activity.

Defendant also challenges the second element of plaintiff's retaliation claim, arguing that "no adverse employment action was ever taken against" plaintiff because "he was not immediately terminated." Def.'s Mot. at 13. According to defendant, plaintiff "was given the option to continue employment so long as he displayed both sides of the identification badge" and plaintiff "voluntarily chose to depart rather than comply with his employer's directive." *Id.*

An adverse employment action is one that necessitates "a significant change in employment status, such as . . . firing." *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998)). In the retaliation context, the definition of an adverse employment action is even broader because it "is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006).

The Court concludes that a reasonable jury could find that defendant fired plaintiff based on the evidence presented. Peppelman told plaintiff "you're gone" or "you're done." Mathis Dep. at 60:23-24; Peppelman Dep. at 37:9-38:2. Peppelman continued to make these statements even after plaintiff said that he "disagreed" with Peppelman's interpretation that plaintiff had "quit." Peppelman Dep. at 35:9-14, 36:23-37:7; Mathis Dep. at 61:3-7, 64:5-8. Peppelman also testified that he "terminated" plaintiff "for not wearing the badge the way it should be" with the mission statement displayed. Peppelman Dep. 31:21-32:6; *see also* Miller Dep. at 21:2-11 (explaining that he believed that Peppelman fired Mathis, and that Mathis did not quit); O'Brien Dep. at 31:12-32:1, 37:10-15 (same); Smith Dep. at 20:13-18 (same). This evidence would

support a finding by a reasonable trier of fact that plaintiff was terminated by defendant and did not voluntarily quit his job.

In addition, defendant's argument that plaintiff was "given the option" to choose between displaying the mission statement—after plaintiff had explained to Peppelman that he objected to doing so based on his beliefs—and between "quitting," ignores the fact that constructive discharge is an adverse action under Title VII.  To establish a constructive discharge, a plaintiff must show that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 888 (3d Cir. 1984); *see also Shepherd v. Gannondale*, No. 14 Civ. 8, 2014 WL 7338714, at *15 (W.D. Pa. Dec. 22, 2014) ("An employee can establish a claim for constructive discharge when an employer acts in a manner so as to have communicated to a reasonable employee that she will be terminated, and the plaintiff employee resigns.").  In the constructive discharge context, "[t]he resignation is treated as if it were an outright dismissal by the employer, which can serve as the basis for a discrimination claim." *Hibbard v. Penn-Trafford Sch. Dist.*, No. 13 Civ. 622, 2014 WL 640253, at *7 (W.D. Pa. Feb. 19, 2014) (citing *Duffy v. Paper Magic Group, Inc.*, 265 F.3d 163, 167–68 (3d Cir. 2001)).

Peppelman testified that the only choice Mathis had was to wear the badge without the tape if he wanted to continue to work.  Peppelman Dep. at 41:20-42:10.  Plaintiff's objection to wearing the badge without tape was based on his religious beliefs as an atheist.  Pl.'s Mot. SOF at ¶ 8; Def.'s Resp. SOF at ¶ 8; Mathis Dep. at 91:14-17; Smith Dep. at 19:7-17.  A reasonable jury could conclude that plaintiff communicated his religious-based objection to displaying the mission statement, and that Peppelman gave him a Hobson's choice between continuing to work

under conditions that offended plaintiff's beliefs or ending his employment. That evidence, if accepted by a jury, constitutes a constructive discharge.[9]

Accordingly, the Court finds that plaintiff has presented sufficient evidence for a reasonable factfinder to conclude that he was either terminated or constructively discharged from his employment, and therefore suffered an adverse action cognizable under Title VII. Defendant's Motion for Summary Judgment as to plaintiff's retaliation claim is denied.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, the Court grants plaintiff's Motion for Partial Summary Judgment and strikes defendant's affirmative defense under RFRA. The Court denies defendant's Motion for Summary Judgment. An appropriate order follows.

---

[9] *See Davis v. U.S. Postal Serv.*, 142 F.3d 1334, 1342 (10th Cir. 1998) (explaining that Title VII protects individuals from having to choose between enduring harassment at work and pursuing their rights under the statute); *Young v. Southwestern Savings & Loan Ass'n*, 509 F.2d 140 (5th Cir. 1975) (finding attendance at mandatory prayer meetings to be "intolerable" for an employee where it would require her to sacrifice her fundamental religious beliefs); *Marroquin v. City of Pasadena*, 524 F. Supp. 2d 857, 865 n. 22 (S.D. Tex. 2007) (rejecting defendant's argument in a Title VII case that plaintiff was not retaliated against because he "had the option of returning to work under the supervision of" the person who was "the source of his abuse" ); *Troutt v. Charcoal Steak House, Inc.*, 835 F. Supp. 899, 902 (W.D. Va. 1993) (stating that employee "should not have been forced to" choose between quitting her job where she was harassed and supporting herself financially).